## UNITED STATES of America, Appellee,

v.

## Julian Raymond GREEN, Appellant.

### No. 75–1390.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 9, 1975.

Decided Dec. 2, 1975.

---

Austin F. Shute, Kansas City, Mo., for appellant.

Anthony P. Nugent, Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before VOGEL, Senior Circuit Judge, and HEANEY and STEPHENSON, Circuit Judges.

VOGEL, Senior Circuit Judge.

Julian Raymond Green, defendant-appellant, brings this appeal from a judgment of conviction in the United States District Court for the Western District of Missouri.[1]

A two-day trial before a jury resulted on March 7, 1975, in guilty verdicts on five counts charging defendants Julian Raymond Green and Lonnie Ray Watson with violations of 18 U.S.C.A. §§ 2 and 2314. Each count alleged a separate instance of the interstate transportation of a falsely made security; that is, a forged money order. Defendant Watson did not appear for trial. His case was severed. On March 6, prior to trial, Count 1 of the six-count indictment charging a conspiracy was dismissed as to the defendant-appellant Green.

Appellant was sentenced by Judge Hanson on May 29, 1975, to a term of ten years on each count, to be served concurrently with each other but consecutive to a sentence of ten years he was then serving in the Missouri State Penitentiary on an armed robbery charge. The state sentence had been imposed upon appellant's conviction on July 16, 1974, of the June 9, 1973, robbery of the Quik-Trip Store at 49th and Main Streets in Kansas City, Missouri—the place and time at which the money orders, hereinafter referred to, were taken.

In seeking reversal of his conviction, appellant complains: (1) that his Sixth Amendment right to a speedy trial was violated; (2) that the evidence was insufficient; and (3) that the trial court erred in overruling appellant's motion to suppress his identification based on an unduly suggestive lineup and certain photographic identification claimed to be violative of the Due Process Clause of the Fifth Amendment. We affirm.

In approaching the appellant's contention that his Sixth Amendment right to a speedy trial was violated, we consider the question having in mind the admonition of the Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101, 116–17 (1972):

> The approach we accept is a balancing test, in which the conduct of both the prosecution and the defendant are weighed.
>
> A balancing test necessarily compels courts to approach speedy trial cases on an *ad hoc* basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right.

---

1. The Honorable William C. Hanson of the Southern District of Iowa sitting by special designation.

Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

At the outset we note that the defendant-appellant was originally charged on August 2, 1973, in an 18-count indictment together with Frederick James Martin, Nelson Vernon Gray and Lonnie Ray Watson. Green was charged in all 18 counts. His first appearance in court was on August 14, 1973, on a writ of habeas corpus ad prosequendum necessitated by the fact that he was then in state custody on the robbery charges. Appellant was not finally tried until March 6, 1975.

In the interim, many things occurred. Initially, shortly after Green's first appearance in August, 1973, a new counsel was appointed. Green's new counsel then demanded that appellant be examined under the provisions of 18 U.S.C. § 4244 for competency determination. By order of Chief Judge William H. Becker, appellant was examined at the Medical Center for Federal Prisoners at Springfield, Missouri. In November, 1973, the medical staff rendered an opinion that Green was not incompetent. In February, 1974, at the request of Green, his then appointed counsel was allowed to withdraw and new counsel was appointed. On March 6, 1974, Green's new counsel advised the court that defendant Green had been committed to a state mental hospital in connection with a state prosecution, and obtained a continuance of pretrial motions. On May 22, 1974, Green filed a motion for a speedy trial. The court set the case for trial on July 15, and then postponed it until July 24.

On July 22, 1974, a hearing was afforded Green on his § 4244 motion, and he was found competent. On July 24, after a jury had been selected but before it was sworn, the United States moved to dismiss the case without prejudice. Green and his then co-defendant Watson, together with their counsel, were advised

by the court that they were not required to agree to such a voluntary dismissal; that they had a right to an immediate trial; and that if they objected to such dismissal the trial would commence at once. They were also advised that if the government's motion to dismiss without prejudice were granted, the government would have the right to and in all probability would seek and obtain a new indictment naming the two defendants and charging the same offenses the indictment theretofore charged.

Green and his co-defendant and their counsel withdrew from the courtroom, later returned, and Green in person and by his counsel advised the court that they had no objection to dismissal without prejudice by the government. The government's motion was accordingly granted. The day following appellant was again indicted, this time on a six-count indictment, five of which were similar to the 18 counts in the original indictment.

On November 7, 1974, Green's motion to suppress identification evidence was set for hearing on December 6, but on that day Green filed a motion for continuance upon the ground that the defendant was waiting for a needed transcript of a state court proceeding for cross-examination of the government's identifying witnesses. On February 5, Green filed a motion to dismiss for want of prosecution, charging that the United States Attorney had refused to allow him to be tried.

■ Applying the "balancing test" referred to by the Supreme Court in *Barker, supra*, we find that appellant was not denied his right to a speedy trial. It is true that the delay of over a year and a half in Green's trial is sufficient to require our inquiry into its causes. But as we look to the reason for the delay, we find both parties responsible. Several delays, e. g., for appellant's mental examination, to allow changes of counsel, to grant a hearing on appellant's motion to suppress evidence, were occasioned by defendant himself. Other delays in-

volved what the Court in *Barker* termed a "more neutral reason"—the court calendar. *Barker, supra,* 407 U.S. 531, 92 S.Ct. 2182. More essential, however, is the significant fact that on July 24, when defendant was given a choice to proceed to an immediate trial, he knowingly and intelligently agreed to a voluntary dismissal, having consulted with counsel and having been carefully advised by the court that the government could and would in all probability seek a new indictment charging defendants with the same offenses.[2]

We give strong weight to this fact. Whether appellant's July 24 action is viewed as a knowing and intelligent waiver of a constitutional right to a speedy trial under the traditional waiver doctrine,[3] or whether this factor is evaluated under the *Barker* balancing test to determine if there was in any event a denial of this right, we must conclude that appellant's Sixth Amendment right was not violated. As the Supreme Court observed in *Barker*:

> Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. [*Barker, supra,* 407 U.S. at 531–32, 92 S.Ct. at 2192.]

From the record it would appear that Green did not, in fact, want a speedy trial at all but rather, as in *Barker,* maintained a hope for dismissal. *See Barker, supra,* 407 U.S. at 535, 92 S.Ct. 2182.

 It would further appear that the prejudice to defendant from the delay was minimal.[4] While awaiting his trial in the district court defendant was either in state custody pending trial or, after his July 16, 1974, state conviction, serving his state conviction. Thus, on July 24, 1974, when defendant intentionally waived his opportunity for an immediate trial he was not in a position to gain his immediate freedom.[5] *Cf. United States v. Calloway,* 164 U.S.App.D.C. 204, 505 F.2d 311 (1974). Neither was there an impairment of defendant's ability to prepare his case for trial. To the contrary,

---

2. The government's explanation of the requested dismissal, uncontested by appellant, is as follows:

 On September 10, 1973, the prosecutor had filed in the first case suggestions advising the trial court that he did not intend to use evidence of the identification of defendant Green in connection with the robbery of the Quik-Trip store mentioned in defendant's motion to suppress. By trial time, however, the prosecutor had changed his mind. When reminded by defense counsel just before the trial commenced of his September announcement and of the abandonment by defendant of his earlier motion to suppress, the government felt that it had no choice but to dismiss the case and start over so the *defendant would have an opportunity to attack the eye-witness identification.*

 Thus it would appear that the delay was occasioned for the benefit of appellant.

3. We hardly need add that if delay is attributable to the defendant, then his waiver may be given effect under the standard waiver doctrine * * *. [*Barker, supra,* 407 U.S. at 529, 92 S.Ct. 2182.]

4. We are aware, as appellant notes, that *Moore v. Arizona,* 414 U.S. 25, 38 L.Ed.2d 183, 94 S.Ct. 188 (1973), cautions that the mere absence of prejudice to the defendant does not in itself end inquiry into the denial of the constitutional right to a speedy trial. We simply note that we have carefully weighed all factors involved in the delay, attributing "talismanic qualities" to none. *See Barker, supra,* 407 U.S. at 533, 92 S.Ct. 2182.

5. Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pre-trial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. [*Barker, supra,* at 532, 92 S.Ct. 2182; footnote omitted.]

the July 24 dismissal and reindictment, in fact, gave defendant an opportunity to prepare an attack on the eyewitness identification. Again, the delay in December, 1974, was due to the defendant's request for a continuance of the hearing on his motion to suppress the identification evidence.

■ The ultimate responsibility for speedy trial rests with the government rather than with the defendant. A defendant has no duty to bring himself to trial. *Barker, supra*, 407 U.S. at 527, 92 S.Ct. 2182. Nonetheless, an ad hoc examination of the factors of delay of Green's trial, as set forth above, reveals he was not deprived of his due process right to a speedy trial.

In appellant's second point he claims insufficiency of the evidence. We have examined the record in detail and find that the evidence pointed overwhelmingly to the defendant's guilt. There was no insufficiency whatsoever. His attack on minor discrepancies between the testimony of two of the witnesses merely raised a jury question which the jury resolved against him. We find nothing supporting claimed error No. 2.

■ Appellant's final contention is that the police lineup was "so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law," *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199, 1206 (1967), and the district court thus erred in failing to find the identification constitutionally inadmissible. *Foster v. California*, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969). Appellant asserts he was taller than the other two men in the lineup and was the only one who was smooth-shaven. This contention is without merit. Each witness first identified appellant from a series of eight to ten pictures of black males the defendant's approximate age, size and complexion. Each witness viewed a separate lineup which did not include the defendant, and made no identification. Both witnesses positively identified defendant in a

second lineup. Photographs and the testimony of the detective in charge of the lineup were adduced at trial which indicated that although the defendant was the tallest of the three men in the second lineup, all were black, smooth-shaven and of the same approximate age, size and height. There was no error in the jury so considering that evidence.

The judgment of conviction is affirmed.