MARK ADAMO CUELLAR, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 10686

January 16, 1980            605 P.2d 207

*Morgan D. Harris,* Public Defender, and *Herbert F. Ahlswede,* Deputy Public Defender, Clark County, for Appellant.

*Richard H. Bryan,* Attorney General, Carson City; *Robert J. Miller,* District Attorney, and *H. Leon Simon,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

*Per Curiam:*

After a trial by jury Cuellar was convicted of first degree murder and sentenced to life imprisonment without possibility of parole.

At about 4:00 a.m. on July 10, 1977, a Stop and Go convenience market was robbed and the attendant killed. Gary DeWitt stopped at the market to pick up a newspaper and noticed a maroon automobile parked by the market with its motor running. He entered the store, noticed that the cash register was open and, seeing no attendant in the market, left the building. He memorized the license number of the car outside the store and, as he started to pull away in his own car, he observed a slender white male wearing a tee-shirt with a decal on the front coming out of a back room. DeWitt parked his car further down the block and walked back to the store. As he approached the store, the aforementioned maroon automobile pulled out of the parking lot. DeWitt went into the store and found the body of the attendant behind the counter on the floor. He immediately notified the police of these events. The investigating officer found that all the paper currency was missing from the cash register.

The police traced the vehicle ownership to a Michael Garcia, who was contacted at his place of work. Garcia informed them that Mark Cuellar, who fit DeWitt's description of the perpetrator, may have borrowed the vehicle during the early morning hours. Cuellar was found in his bedroom sleeping. Above his head, on the wall was a rifle or shotgun, and on the floor below the bed was a tee-shirt with a zig-zag emblem on it, along with other clothes. After Cuellar's arrest, a police officer requested consent to search the bedroom from Cuellar's step-father. The step-father signed the consent form because "[the officer] said you should sign it or else I'll have a search warrant within ten minutes anyway so I went ahead and signed it." During the subsequent search the police found money in excess

of one thousand dollars behind the bed, and a recently fired sawed-off shotgun in a closet.

There was undisputed testimony at trial that Cuellar had smoked phencyclidine (PCP, a controlled substance, NRS 453.181) on the night of July 9, 1977. The defense, in an effort to establish Cuellar's state of mind, called Steven Lerner as an expert in the effects of phencyclidine. The district court allowed Lerner to testify generally on the subject of phencyclidine but did not allow him to testify as to Cuellar's state of mind on the date of the murder.

1. In this appeal Cuellar contends that the police officer's purported statement that he could get a warrant to search the premises within ten minutes coerced his step-father into signing the consent form. The step-father, however, testified that he knew he could demand that the police get a warrant and that he intentionally gave up this right.

It is well settled that a search executed with consent falls outside the ambit of Fourth Amendment warrant requirements. Schneckloth v. Bustamonte, 412 U.S. 218 (1973). To be valid, however, the consent must be voluntarily given and not the product of coercion, either express or implied. Sparkman v. State, 95 Nev. 76, 590 P.2d 151 (1979). Whether the consent was voluntarily given is a question of fact to be decided from the totality of the surrounding circumstances. Surianello v. State, 92 Nev. 492, 553 P.2d 942 (1976). The district court considered the facts and circumstances surrounding this consent in its decision to deny the motion to suppress. That he was told a warrant would be sought if his consent was not obtained does not negate the evidence that supports the district court's finding of consent. *See* People v. Hancock, 525 P.2d 435 (Colo. 1974); State v. Douglas, 488 P.2d 1366 (Or. 1971), cert. denied, 406 U.S. 974 (1971); State v. Roy, 562 P.2d 213 (Or.App. 1977).

2. Cuellar next contends that the district court's refusal to allow Steven Lerner to testify as an expert violated his constitutional right to present a defense. Lerner was questioned at length about his qualifications as an expert on phencyclidine and was allowed to testify generally as to its effects. He was, however, never qualified as an expert. Although the trial judge should have made a determination as to whether this witness was qualified to testify as an expert on the subject of phencyclidine, *see* Hardison v. State, 84 Nev. 125, 437 P.2d 868 (1968),

it is clear that, even as a lay witness, Lerner could testify as to the use and influence of phencyclidine as he was, in fact, permitted to do. Crowe v. State, 84 Nev. 358, 441 P.2d 90 (1968). Lerner himself stated that he was not competent to testify as to Cuellar's state of mind at any particular time, and furthermore counsel stipulated to having no jury instruction relating to whether Lerner was determined to be an expert. Under these circumstances, we cannot find that the district court abused its discretion. *See* Singleton v. State, 90 Nev. 216, 522 P.2d 1221 (1974).

Accordingly, we affirm appellant's conviction.