472 A.2d 114

**Walter Henry BORGEN**

v.

**STATE of Maryland.**

**No. 727, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

March 8, 1984.

Certiorari Denied Aug. 20, 1984.

62

Robert D. Dinerstein, Washington, D.C., with whom was Nancy Cook, Assigned Public Defender, on the brief, for appellant.

Deborah K. Chasanow, Asst. Atty. Gen., with whom were Stephen H. Sachs, Atty. Gen., Andrew L. Sonner, State's Atty., Montgomery County, and Roger W. Calvin, Asst. State's Atty., Montgomery County, on the brief, for appellee.

Argued before GARRITY, ALPERT, and BELL, JJ.

ALPERT, Judge.

### Facts and Proceedings

On September 21, 1981, Arthur Lineberry, manager of a Texaco station located at 600 Quince Orchard Road, Gaithersburg, Maryland, arrived at work and discovered that a tool chest containing various automotive tools had been broken into. It appeared to Lineberry that none of the doors of the premises had been broken or pried. Nine days later Lineberry provided the police with an inventory of the stolen tools.

On December 19, 1981, Walter Henry Borgen, appellant, was arrested for his alleged involvement in two offenses *not related* to the offenses herein alleged and escorted to the Germantown police station. Montgomery County Police Department Detective Donald Deaton informed appellant that a search warrant relevant to the *unrelated offenses* had been executed at appellant's residence earlier that day. Later that day, appellant's home was searched again by Detective Deaton. No warrant was issued for this search and it is disputed whether appellant voluntarily consented to the search.[1] Detective Deaton and Lineberry went to appellant's home and Deaton led Lineberry to the rear of the house where various tools were observed. Lineberry in-

---

1. Facts relevant to the consensual nature of this search will be discussed in full detail in part IV of this opinion.

spected the tools and identified those that he thought had been stolen from the Texaco Station. At trial Lineberry identified a number of tools as either belonging to him or the Texaco Station.

On January 8, 1982, appellant was charged in a two-count indictment with theft over $300 and storehouse breaking with intent to commit a felony. On February 4, 1982, trial was set for June 15, 1982. Prior to trial, appellant's trial counsel moved to suppress various items of evidence seized from his residence December 19, 1981. On April 23, 1982, after a full hearing, the court denied appellant's motion.

On May 19, 1982, the State filed a motion in which it sought a continuance of the trial date to a date not therein mentioned, on the ground that the Assistant State's Attorney was involved in a five-to-ten day case which would begin on June 14, 1982, the day before the designated trial date. Judge David Cahoon, Administrative Judge of the Circuit Court for Montgomery County, withheld ruling on the motion for continuance until June 10, 1982, granted the motion, and continued the trial until November 15, 1982.

Appellant filed a motion to dismiss the indictment on June 22, 1982, alleging that the continuance violated his "right to speedy trial and due process" and was in derogation of Maryland Rule 746. Appellant's motion was heard and denied by Judge Calvin Sanders on August 6, 1982. At that time appellant was offered an advanced trial date by both the Assistant State's Attorney and the trial judge. Our review of the record indicates that no response was ever made by appellant or his trial counsel.

On the day of trial appellant renewed his motion to dismiss for lack of speedy trial, which was again denied by the court. Appellant was convicted on Count I of the indictment, theft over $300., and acquitted on Count II, the storehouse breaking charge. On February 18, 1983, he was sentenced to five years to the Division of Correction, consec-

utive to a sentence which appellant was then serving.[2] Noting a timely appeal, he argues:

    I.   The lower court erred in concluding that it had no discretion to review the administrative judge's ruling that the State had demonstrated good cause to postpone the trial date beyond the 180-day period established by Rule 746.

    II.   The administrative judge erred in determining that the State's reason for seeking a continuance constituted good cause for postponement of the trial date.

    III.   Appellant was denied his constitutional right to a speedy trial when his trial was held 328 days after his arrest.

    IV.   Appellant's consent to a warrantless search of his residence was involuntary under the totality of the circumstances.

    V.   The evidence was insufficient to convict appellant of theft over $300.

Perceiving no error, we shall affirm.

### I.

When the State moved for a continuance of the June 15, 1982 trial date, the appellant filed no answer to the motion, nor did he make any immediate objection. Subsequently, when the trial date was set for five months in the future, appellant moved to dismiss the indictments, alleging that he was being denied his constitutional right to a speedy trial and also because of a violation of Maryland Rule 746.

Maryland Rule 746 implements Md.Ann.Code, art. 27, § 591 (1957, 1982 Repl.Vol., 1983 Cum.Supp.) which mandates that a trial date be set no later than 180 days from the date of arraignment or the appearance or appointment of counsel for the accused, whichever shall occur first. Under

---

**2.** That sentence has since been vacated, as this Court reversed Borgen's theft conviction. See *Borgen v. State,* 56 Md.App. 521, 468 A.2d 390 (1983).

Rule 746 the appropriate sanction for failure to bring a case
to trial within 180 days is dismissal of the charges. *State v.
Hicks,* 285 Md. 310, 385, 403 A.2d 356 (1979). A postpone-
ment may be granted only by the administrative judge and
only upon a showing of good cause for not commencing the
trial on the assigned date and good cause for the extent of
the delay. *State v. Frazier et al.,* 298 Md. 422, 448, 470 A.2d
1269 (1984). In *Frazier,* the Court of Appeals held that an
administrative judge's decision "concerning the need for a
postponement and the rescheduling of a criminal trial should
be accorded great weight." At 453, 470 A.2d 1269. Thus,
the review to be undertaken by a trial judge when consider-
ing an administrative judge's finding of good cause should
be similar to that undertaken by an appellate court, *i.e.,* was
there an abuse of discretion by the administrative judge?
*State v. Frazier, supra,* at 450–453, 470 A.2d 1269. *See also
State v. Green,* 54 Md.App. 260, 266, 458 A.2d 487 (1983).
*Frazier* explained the rationale for according great defer-
ence to an administrative judge's postponement ruling:

The major safeguard contemplated by the statute and
rule, for assuring that criminal trials are not needlessly
postponed beyond the 180-day period, is the requirement
that the administrative judge or his designee, rather than
any judge, order the postponement. This is a logical
safeguard, as it is the administrative judge who has an
overall view of the court's business, who is responsible 'for
the administration of the court,' who assigns trial judges,
who 'supervise[s] the assignment of actions for trial,' who
supervises the court personnel involved in the assignment
of cases, and who receives reports from such personnel.

Consequently, the administrative judge is ordinarily in a
much better position than another judge of the trial court,
or an appellate court, to make the judgment as to whether
good cause for the postponement of a criminal case exists.
*Moreover, with regard to the extent of a postponement,
even though the administrative judge may not personally
select or approve the new trial date in a postponed case,
such selection is made by personnel operating under his*

*supervision and reporting to him. When he postpones a case, he is generally aware of the state of the docket in the future, the number of cases set for trial, and the normal time it will likely take before the case can be tried.*
298 Md. at 453–454, 470 A.2d 1269 (footnotes omitted) (emphasis supplied).

After hearing arguments from counsel on the motion to dismiss, Judge Sanders rendered his oral opinion and stated in pertinent part:

> Although the order does not specifically say so, I think I have to assume that Judge Cahoon made a determination based on the content of the motion that the State had some good cause, in his opinion, for postponement, and saw fit to grant the motion, and I really don't think that it's for this court at this time to review that finding. So I think, as far as your motion with regard to 746, I think that there has been compliance with 746(b) which. . . .

Seizing upon these extemporaneous words of Judge Sanders, appellant argues that while the trial judge did have limited discretion to review the administrative judge's postponement decision, his failure to exercise *any* discretion resulted in a denial of appellant's rights under Rule 746. *See, Colter v. State,* 297 Md. 423, 426, 466 A.2d 1286 (1983).

■ Initially, we point out that *State v. Frazier, supra* and *State v. Green, supra,* were rendered subsequent to Judge Sanders' consideration of this matter. Consequently, Judge Sanders did not have the benefit of those decisions' guidelines when reviewing the administrative judge's determination of good cause for the continuance. Although it is arguable that he did not review the administrative judge's finding of good cause, it is equally arguable that he did since Judge Sanders had before him the State's motion for continuance, its reasons therefor, and the explanation made in argument at the hearing by the Assistant State's Attorney. By stating that, "I think there has been compliance with 746(b)," Judge Sanders was effectively ruling that there was

good cause and exercising the limited discretion articulated by the Court of Appeals in *Frazier.*[3]

## II.

The State's continuance motion was based on a newly assigned prosecutor's scheduling conflict. Appellant contends that the administrative judge abused his discretion by finding that this ground constituted good cause for granting the continuance. Appellant further contends that the other reason advanced by the State at the hearing of the motion to dismiss—the reorganization of the Montgomery County State's Attorney's Office—was not a matter presented to the administrative judge.

■ It is clear to this Court that appellant did not object to the fact of the continuance but only to the length of the continuance. We note that the State's motion of continuance was filed on May 19, 1982, but that an order granting that motion was not signed until June 10, 1982, thus indicating that the appellant had at least 20 days to object to the continuance. As there were reasons that could have constituted good cause in the motion and since appellant did not object to the continuance,[4] it can hardly be said that the administrative judge abused his discretion in granting a continuance.

■ One of the administrative judge's responsibilities under Maryland Rule 746(b) is to see that a continuance is not extended unnecessarily. *State v. Frazier, supra.* The extent of the delay to the new trial date did not manifest an abuse of discretion as the State explained that appellant had

---

**3.** There would be no reversible error even if Judge Sanders indeed failed to exercise his discretion to review the administrative judge's ruling for we shall hold in part II that there was no abuse of discretion by the administrative judge under the facts of this case.

**4.** On the face of the continuance motion, Administrative Judge Cahoon interlineated that there was no objection by appellant to the granting of the motion.

received the earliest possible trial date. *State v. Frazier, supra,* 298 Md. at 462, 470 A.2d 1269.

In view of the presumption of validity the administrative judge's "good cause" ruling carries, *State v. Frazier, supra,* and considering the fact that appellant made no objection to the motion for continuance, it would not have been unreasonable for the administrative judge to assume that appellant consented to a new trial date.

### III.

Appellant contends that he was denied his constitutional right to a speedy trial because the period of time from arrest to trial was approximately 11 months. We have previously explained that part of the delay resulted from the granting of the State's motion for continuance. Thereafter appellant made two separate motions to dismiss the indictment. At the first motion hearing on August 6, 1982, appellant focused his argument on the alleged violation of Maryland Rule 746. Appellant renewed his motion to dismiss on November 15, 1982, the morning of the trial. There, appellant based his motion on his constitutional right to a speedy trial. Appellant asserted that he had been prejudiced by the delay because certain evidence—receipts for the tools that were the subject of the theft—was lost when appellant's landlord evicted appellant and his wife from their home. Appellant further claimed that he could not now locate a witness he had intended to call to prove appellant's ownership of the tools because that witness had moved sometime after the continued trial date.

The State attempted to rebut appellant's contentions by proffering that Detective Deaton, if called, would testify that he had asked appellant's wife in December 1981 whether there were any receipts for the tools and that Mrs. Borgen replied that she could not find any receipts. Detective Deaton would have further testified that Mrs. Borgen never came forth with any receipts. The trial judge considered defense counsel's argument and stated:

Well, here we are in November of 1982. He's had 11 months to find those receipts. When is the landlord supposed to have gone in and taken them? All right, he had 6 months to get in or send somebody in, his father, or someone in to get those receipts. I don't think that shows prejudice at all, Mr. Pinkus. He can't just sit on his haunches and do nothing to get his case ready. And if he was going to have a trial on June 15, then he should have known that those receipts would be absolutely essential for that trial and I don't know why he didn't try to get them someway before that. So I can't see that he's been prejudiced in any way by the delay.

■■■ There is no constitutional right to be tried within a specified period of time. Denial of the right must be determined on a case-by-case basis, balancing both the conduct of the defendant and the State. *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Epps v. State,* 276 Md. 96, 345 A.2d 62 (1975). A four factor test has evolved for determining whether a defendant has been denied a speedy trial. Those factors are: (1) length of delay; (2) reason for delay; (3) defendant's assertion of the right; and (4) prejudice to the defendant. We apply those four factors only when the length of the delay is of constitutional dimension. *State v. Lawless,* 13 Md.App. 220, 229–32, 283 A.2d 160 (1971), *cert. denied,* 264 Md. 749, *cert.* denied, 409 U.S. 855, 93 S.Ct. 192, 34 L.Ed.2d 99 (1972). *See also Powell v. State,* 56 Md.App. 351, 358, 467 A.2d 1052 (1983), *cert. denied,* 298 Md. 540, 471 A.2d 745 (1984). We deem the 10 month, 7 day delay in this case to be of constitutional dimension. *See State v. Hiken,* 43 Md.App. 259, 272 & n. 20, 405 A.2d 284 (1979). Accordingly, we shall apply the four-factor test.

A. *Length of Delay.* Appellant became an accused and entitled to a speedy trial upon commencement of his prosecution by way of arrest, information or indictment, whichever first occurred. *State v. Gee,* 298 Md. 565, 471 A.2d 712 (1984). The indictment having been filed on January 8,

1982, we compute from that date to the commencement of trial, November 15, 1982, a delay of 10 months and 7 days.[5]

B. *Reason for the Delay.* The period of time from January 8, 1982 to June 15, 1982 was required for reasonable preparation of the case by the prosecution and for the orderly process of the case. *Wilson v. State,* 44 Md.App. 1, 17, 408 A.2d 102 (1979), *cert. denied,* 286 Md. 755, *cert. denied,* 446 U.S. 921, 100 S.Ct. 1858, 64 L.Ed.2d 275 (1980). The period from June 15, 1982 to the trial date of November 15, 1982 would ordinarily be chargeable to the State as the continuance was granted at its request. However, at the August 6, 1982 hearing on the appellant's motion to dismiss the indictment, the prosecution offered to make an effort to advance the trial date. The court followed up on the State's suggestion and stated:

I think, as the State has suggested, if Mr. Borgen is in fact desirous of a trial earlier than the November 15 present date, I think we can accomodate him and would do that. The Court will deny your motion to dismiss the indictment in this matter. We want to talk to Mr. Borgen and see if he would like an earlier date than the November . . . .

Trial counsel responded, "I'll speak with him, Your Honor." The Court finalized the potential advancement by stating, "Okay, and Mr. Sullivan will make arrangements to advance it."

It is clear, therefore, that advancement of the trial date was conditioned upon appellant's response. There is nothing whatever in the record to indicate that appellant thereafter sought to advance the trial date. Although we recognize that the burden is upon the State to bring the defendant to trial and that appellant has no burden to bring himself to trial, *Strickler v. State,* 55 Md.App. 688, 694, 466 A.2d 51

---

**5.** It appears from the record that the appellant was not arrested before indictment for the subject offenses as he had been previously incarcerated on unrelated charges. Thus prosecution commenced on the date of indictment.

(1983), under the facts of the instant case it appears appellant declined an invitation for an earlier trial date.

▅▅▅ Accordingly, we hold that if a defendant is offered an earlier trial date, and declines to accept the invitation, either affirmatively or by silence, the period of time from the date of the offer to the earlier trial date is chargeable to the State and the time between an offered advanced trial date and the actual trial date shall be chargeable to the defendant. Under the circumstances of this case, because appellant did not accept the State's offer to set an earlier date, a specific date was never set, and we therefore cannot measure the period of time from the hypothetical advanced trial date to the actual trial date. Thus, because appellant's inaction apparently precluded an earlier trial date, we shall attribute the time from when appellant was offered an advanced trial date (June 15, 1982) until the actual trial date (November 15, 1982) to neither the State nor the appellant.

▅▅▅ C. *Assertion of the Right.* A defendant's failure to demand a speedy trial does not constitute a waiver of that right, and is only one consideration when determining whether the right has been denied. *Powell v. State, supra,* 56 Md.App. at 365, 467 A.2d 1052. Still, this failure to assert a right to a speedy trial is entitled to strong evidentiary weight against a defendant. *Id.* Although it is arguable that the motion to dismiss filed on June 22, 1982, amounted to a demand for a speedy trial, the appellant's failure to accept the court's invitation to take an advanced trial date is a failure to assert his right to a speedy trial and is entitled to strong evidentiary weight. *See also Barker v. Wingo, supra,* 407 U.S. at 531–32, 92 S.Ct. at 2192–93; *United States v. Green,* 526 F.2d 212, 215 (8th Cir.1975).

D. *Prejudice.* In *Barker v. Wingo, supra,* 407 U.S. at 532, 92 S.Ct. at 2193, the Supreme Court observed that prejudice should be "assessed in the light of the interest of the defendants which the speedy trial right was designed to protect" and identified three such interests as (1) to prevent oppressive pre-trial incarceration; (2) to minimize anxiety

and concern of the accused;  and (3) to limit the possibility that the defense will be impaired.  In denying the motion for speedy trial, the trial judge noted that the defendant was already serving a sentence and thus had not been awaiting trial on pre-trial detention.  The trial judge further opined that the delay until trial did not cause appellant's inability to locate the receipts.  Instead, the lower court concluded that appellant's neglect caused his inability to locate this evidence.

### The Balancing

Although the length of delay was of constitutional dimension, only one month and 24 days thereof could possibly be chargeable to the State, that is, the period from June 15, 1982, the original trial date, to August 8, 1982, when the defendant failed to accept the court's invitation to advance the trial date.  As we indicated earlier, the period from January 8, 1982 to June 15, 1982, was necessary for the orderly process of the case.  *Wilson v. State, supra.*  Against that relatively brief period of time, we balance the "strong evidentiary weight" arising from the defendant's failure to assert his right.  *Barker v. Wingo, supra* at 531–32, 92 S.Ct. at 2192.  The trial court found that any lost evidence was the responsibility of the defendant and had not occurred because of any trial delay.  We cannot say that he was clearly erroneous.  Maryland Rule 1086.

In *Barker v. Wingo, supra* at 531, 92 S.Ct. at 2192, the Supreme Court held that "a deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the Government."  In *Powell v. State, supra,* 56 Md.App. at 367, 467 A.2d 1052, this Court held that "we see no reason in logic or law why 'a deliberate attempt to delay the trial' should not be weighed as heavily against the defendant (appellant)."  We quoted the *Barker* Court's opinion that:

> [B]arring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional right [to a speedy trial] on a record that

strongly indicates, as does this one, that defendant did not want a speedy trial.

407 U.S. at 536, 92 S.Ct. at 2195. By declining the court's invitation to advance the trial date, appellant herein strongly indicated that he did not really want a speedy trial. Hence, we hold that the court was correct in denying his motion to dismiss the indictment.

## IV.

Here appellant challenges the consent search and the second search warrant based thereon.

When appellant was arrested on December 19, 1981, he was handcuffed, taken to the Germantown police station, and placed in an interrogation room where he was questioned by several police officers. According to appellant, Detective Deaton advised appellant that a search warrant had been executed at his residence that day and that the police requested appellant's consent to return to his residence to search for some tools. Appellant testified that Detective Deaton told him that he was going to get a search warrant and would have to remain in the police station until the search warrant was executed, which might be until midnight, but that if appellant consented to the search, he would be presented to the Commissioner more quickly and the detective could arrange for his release on personal recognizance. Appellant also testified that he was told that if he did not so consent, he would be charged with additional crimes.

Appellant's testimony was in marked contrast to that of Detectives Deaton and Redding, Montgomery County police officers who were investigating certain crimes in which appellant was allegedly involved. Although they denied promising that he would be released on his own recognizance, Detective Deaton did testify that he told appellant that if he didn't consent he would continue his investigation and if the tools came from the burglary, he would *probably* get a search warrant.

Appellant contends that our independent constitutional review of the entire record will reveal that under the totality of the circumstances appellant's consent was not voluntarily given because he was clearly in custody and was told that his failure to consent would result in the police obtaining a search warrant, thus leading appellant to conclude that his withholding of consent would be irrelevant.

In *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), the landmark decision on "consent searches," the Supreme Court held that the question of whether a consent to a search was in fact voluntarily given or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances. *Id.* at 227, 93 S.Ct. at 2047–48. The *Schneckloth* Court further stated that "while knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the *sine qua non* of an effective consent." *Id.* *Schneckloth* further taught us that "in examining all the surrounding circumstances to determine if in fact the consent to search was coerced, account must be taken of subtly coercive police questions, as well as the possibly vulnerable state of the person who consents." *Id.* at 229, 93 S.Ct. at 2049.

In *Whitman v. State,* 25 Md.App. 428, 456, 336 A.2d 515 (1975) we stated:

While each case must rest for decision upon its own facts and 'the totality of the circumstances,' an arrest without probable cause followed by custodial prodding for the arrestee's consent to a search, combined with police representations that the issuance of a warrant will be practically automatic—these are circumstances calculated only to persuade the individual that insistence upon Fourth Amendment guarantees will secure for him merely a delay of the inevitable search rather than the protection against unreasonable search and seizure to which he is constitutionally entitled.

At the hearing on the motion to suppress evidence resulting from the consent search and second search warrant, the hearing judge, after consideration of the conflicting evidence presented and arguments of counsel, stated in pertinent part:

Well, under the totality of the circumstances, Mr. Borgen did exercise his free will in consenting to that search. I listen [sic] carefully to all of the testimony which has been presented on that issue here. While I concede that it is close, I am satisfied that the consent was properly given.

While the hearing judge made no specific finding of fact, implicit in the aforequoted ruling was that the hearing judge believed the testimony of the police detectives over the appellant's testimony.

The governing standard of review for an appellate court in this type of situation was set forth in *Walker v. State,* 12 Md.App. 684, 694–95, 280 A.2d 260 (1971):

Where the resolution of a purely factual question is all that is involved, we, of necessity, give great weight to the finding of the hearing judge, and his decision will not be disturbed on appeal unless we find a clear abuse of discretion. The preliminary decision on the admissibility of a confession, however, be that decision made at a pretrial suppression hearing or while the jury is excused during the course of trial, is 'a mixed question of law and fact.' *Mulligan v. State,* 10 Md.App. 429, 431, n. 1 [271 A.2d 385]; *Barnhart v. State,* 5 Md.App. 222, 224 [246 A.2d 280]. It is, therefore, a situation 'where a conclusion of law as to a [constitutional] right and a finding of fact are so intermingled as to make it necessary, in order to pass upon the [constitutional] question, to analyze the facts.' *Fiske v. Kansas,* [274 U.S. 380,] 385 [47 S.Ct. 655, 656, 71 L.Ed. 1108]. We accord 'an appropriate and substantial effect to [the trial court's] resolutions of conflicts in evidence as to the occurrence or non-occurrence of factual events and happenings... But ... We cannot be precluded ... from determining whether the circumstances

under which the confession was made were such that its admission in evidence amounts to a denial of due process.' *Haynes v. Washington,* [373 U.S. 503,] 515, 516 [83 S.Ct. 1336, 1344–45, 10 L.Ed.2d 513]. What we mean, therefore, when we say that we have the obligation to make an independent, reflective constitutional judgment on the facts whenever a claim of a constitutionally-protected right is involved is that, although we give great weight to the findings of the hearing judge as to specific, first-level facts (such as the time that an interrogation began, whether a meal was or was not served, whether a telephone call was requested, etc.) we must make our own independent judgment as to what to make of those facts; we must, in making that independent judgment, resolve for ourselves the ultimate, second-level fact—the existence or non-existence of voluntariness.

*See also Fidazzo v. State,* 32 Md.App. 590, 591–92, 363 A.2d 583 (1976); *Dixon v. State,* 23 Md.App. 19, 35–36, 327 A.2d 516 (1974) (and cases cited therein); *Howell v. State,* 18 Md.App. 429, 437, 306 A.2d 554 (1973), *rev'd on other grounds,* 271 Md. 378, 318 A.2d 189 (1974).

■ The disputed facts before us in the instant appeal are "first level facts." As such, we must give great weight to the findings of the trial judge with respect to those first level facts. Implicit in his decision denying appellant's motion to suppress was the trial judge's belief that the police officers were presenting a truthful version and that appellant was not. On the record before us, we cannot say that his findings were clearly erroneous.

An appellate court can reject the testimony of a witness credited by the triers of the fact only when the testimony is inherently improbable. There must exist a physical impossibility that the statements of the witness are true or their falsity must appear without resorting to inferences or deduction. The appellate court may not substitute its judgment with respect to the credibility of a witness for that of the jury and trial judge on the ground that the evidence is inherently improbable unless it is so clearly

false and unbelievable that reasonable minds may not differ.

24A C.J.S. *Criminal Law* § 1883 (1962). *E.g., People v. Jones,* 268 Cal.App.2d 161, 165, 73 Cal.Rptr. 727 (1968); *People v. Hawkins,* 218 Cal.App.2d 151, 155, 32 Cal.Rptr. 392 (1963); *People v. Foster,* 195 Cal.App.2d 651, 653, 15 Cal. Rptr. 891 (1961); *People v. Gates,* 29 Ill.2d 586, 195 N.E.2d 161, 163, *cert. denied,* 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964); *State v. Dupepe,* 241 S.W.2d 4, 7 (Mo.1951).

Declining to overrule the trial judge on his findings of first-level facts, we constrain ourselves to analyzing his conclusion. Consequently, we must make our own independent reflective judgment as to what to make of those facts; we must resolve for ourselves the ultimate, second-level fact—the existence or nonexistence of voluntariness.

Initially, we observe that the testimony was uncontradicted that during the interview at the Germantown police station appellant was friendly and coherent. There seems to be no dispute that he knew he had a right to refuse consent to the search; rather the conflict revolves around the policemen's alleged promise of release on his personal bond and the clearly coercive threat to obtain a search warrant. As we indicated earlier, the trial judge resolved the disputed fact regarding appellant's release on personal bond in the State's favor. We also note that "the well-founded advice of a law enforcement agent that, absent a consent to search, a warrant can be obtained does not constitute coercion." *Whitman v. State, supra,* 25 Md.App. at 450, 336 A.2d 515. *See also United States v. Dennis,* 625 F.2d 782, 793 (8th Cir.1980); *United States v. Culp,* 472 F.2d 459, 461 n. 1 (8th Cir.), *cert. denied,* 411 U.S. 970, 93 S.Ct. 2161, 36 L.Ed.2d 692 (1973); *Cuellar v. State,* 96 Nev. 68, 605 P.2d 207, 208 (1980).

If the testimony of Detective Deaton was to be believed, appellant faced no threat of continuous detention until a search warrant was obtained. Detective Deaton testified that, "I told them that I would continue to investigate the burglary, and if I find the tools in his possession

came from that burglary, that I would probably get a search warrant and go back." Detective Deaton further testified that when appellant called his wife to tell her that the police, along with Mr. Lineberry, would be coming to their residence to look at the tools, appellant made no mention that he had to consent. Appellant also testified that when he called his wife, he told her that if he refused to consent, they would execute another warrant. That was another fact denied by the police, and another fact that the trial court chose to decide in the State's favor.

No evidence was presented that this was the defendant's first arrest or that he was unfamiliar with the criminal justice system. We must also be mindful of the nature of appellant's defense, that is, that the tools in fact belonged to appellant and not to Lineberry or the Texaco Station. Perhaps the appellant allowed the search to take place because he did not believe that the police would uncover any incriminating evidence. It appears that appellant's "willingness to allow the warrantless search to take place was basically a tactical decision calculated 'to turn suspicion away from [him] . . . by appearing to give the authorities innocent and wholehearted cooperation.'" *Humphrey v. State,* 39 Md. App. 484, 490, 386 A.2d 1238, *cert. denied,* 283 Md. 733 (1978) (*quoting United States v. Curiale,* 414 F.2d 744, 747 (2nd Cir.), *cert. denied,* 396 U.S. 959, 90 S.Ct. 433, 24 L.Ed.2d 424 (1969)). It is also noteworthy that appellant was totally cognizant of the fact that he had a right to refuse to consent to the search.

The consent to search form, which appellant contends he signed in blank, appears as follows:

**82**

CONSENT TO SEARCH

Date 10-19-81

Location of Search Premises, outbuildings, vehicles parked in yard, house of

Walter Henry Borgen, 11500 Game Preserve Road, Gaithersburg Md.

Case RD Number G145923

I hereby freely and voluntarily give my consent to officers of the
Montgomery County, Maryland, Department of Police to conduct a search
of Above described property                                           for
evidence of Tools from Burglary- Attached List made a part hereof.

I give my consent, understanding that the officers have no search
warrant authorizing this search.

(Signed)

Witnesses:

#420

SIEZED - 1 9RAY TOOL BOX CONTAINING AIR TOOLS
SNAP UP RED BOX CONTAINING VACUM FUEL PUMP TESTER
1 RED Tiny 14 SOCKET SET
1 BIK TRAY BOX CONTAINING SOCKET SET
RED SNAP ON BOX W/ FRONT END SOCKET SET.
1 BAII PIGN HAMMER
1 METTRIC SOCKET SET 10 Pc.
1 10Pc. METTRIC SOCKET SET
13 Pc. SOCKET SET WITH ALLEN WRENCH ADAPTOR

(over)

MCP Form 120 (Rev. 3-15-74)

Appellant's intelligence and ability to articulate may be gleaned from the cold record. Thus, the terms, "I hereby freely and voluntarily give my consent to the officers of the Montgomery County, Maryland, Department of Police to conduct a search" for evidence of tools from burglary cannot be deemed insignificant in our overall evaluation.

Considering the findings of first-level facts by the trial judge, and exercising our own independent constitutional review, we cannot hold that the trial judge erred in concluding that the consent to search was voluntary.

## V.

Finally, appellant contends that "the evidence adduced at trial was insufficient to convict him of theft over $300 in violation of Maryland Code Art. 27, § 342." We find no merit in this contention. Arthur Lineberry, manager of the Texaco Station, testified that he had accumulated tools over a period of years and specifically identified certain tools and placed a value thereon. Appellant argues that there was no evidence under Art. 27, § 342(a) that the control over the property in question by the appellant was in fact unauthorized. The evidence, viewed in the light most favorable to the State, indicated a taking of the tools. Those same tools were found to be in the possession of appellant, a person who the trier of fact determined was not their lawful owner. As a result, the evidence was clearly sufficient to permit the inference that appellant's control over the tools was not authorized. Whether Lineberry owned all the tools or whether some were owned by the Texaco Station, they were clearly in the possession and control of Lineberry until they were stolen. Theft from the bailee is nonetheless theft. *See, Richardson v. State,* 221 Md. 85, 88, 156 A.2d 436 (1959).

Considering the evidence in a light most favorable to the State, a rational trier of the fact could have found the

**84**

essential elements of the crime of theft beyond a reasonable doubt. *State v. Rusk,* 289 Md. 230, 245, 424 A.2d 720 (1981).

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.