531 A.2d 1028

**Thomas R. JORDAN**

v.

**STATE of Maryland.**

**No. 63, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

Oct. 8, 1987.

Mark Colvin, Asst. Public Defender (Alan H. Murrell, Public Defender, on brief), Baltimore, for appellant.

Norman L. Smith, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Kurt L. Schmoke, State's Atty. for Baltimore City and Carolyn Starks, Asst. State's Atty. for Baltimore City, on brief), Baltimore, for appellee.

Submitted before WEANT, BISHOP and ALPERT, JJ.

ALPERT, Judge.

Thomas R. Jordan, appellant, was charged with unlawfully transporting a handgun. Prior to trial, he moved to suppress the handgun. A suppression hearing was held before Judge David Ross, sitting in the Circuit Court for Baltimore City.

The arresting police officer, Richard Grisholm, testified that on July 8, 1986, at 1:21 p.m., he "received a call from Communications to respond to the 500 block of North Payson Street for a narcotics activity." Officer Grisholm responded in uniform in a marked police car. He testified that when he reached the intersection of Payson Street and

Edmondson Avenue, he observed appellant walking across Edmondson Avenue. Appellant glanced in Officer Grisholm's direction "3 or 4 times" and "was holding a bag against his left side." Grisholm testified that it appeared that appellant "was trying to conceal it on the left side of his leg at thigh level." Grisholm, therefore, got out of his patrol car and approached appellant, who was standing about fifteen to twenty feet away. According to Grisholm's testimony, appellant then asked, "You want me?". Officer Grisholm then "said something to the effect I would like to speak to you for a minute." What next took place was described by Officer Grisholm as follows:

A. I started toward him. He started toward me, he raised the bag which he had been carrying, up with both hands and pointed it at my upper torso area, and I noticed that he was looking down at the bag and glancing at me and again down at the bag, and he was manipulating something from the back of the bag. We were still closing on each other. We got to between several feet while this was going on, and I became fearful of the contents of the bag.

Q. Why were you afraid?

A. I have recovered a number of guns in bags just like that.

Q. Okay.

A. And the manner in which he was grabbing it and manipulating it, I was thinking, gun in the bag, and it could have been trying to fire it.

. . . . .

Q. How would you describe the emotion that you felt?

A. I thought I was about to be shot or hurt in some manner.

Q. Okay. After you grabbed the bag, then what happened?

A. I grabbed the bag, and I felt it, and I could feel there was a hard object, possibly a gun in it, and I pivoted him and grabbed him with my left hand and threw him away

from me, over the hood of the radio car, and pinned him down. At that time, my back-up units started to park behind me. I checked the bag and found the gun inside the bag.

Q. And then, what happened? At what point was the defendant placed under arrest after that?

A. Yes. When I saw the bag, or when I saw the gun inside the bag, he was placed under arrest.

When asked why he never drew his service revolver or ducked instead of snatching appellant's bag from him, Officer Grisholm replied:

It was just a reaction. It was the only thing that was left to do. It was like there, and I just lunged for it and grabbed it. It may—I think it turned out it was the right move, but under other circumstances, it may not have been.

Appellant's version of the events that transpired on July 8, 1986 differs from Officer Grisholm's testimony. According to appellant, he was walking on Edmondson Avenue when he and Officer Grisholm "exchanged glances." Appellant testified that, at the time, he assumed that the officer was attracted by the jewelry he was wearing.[1] He then flagged down a cab. Before the cab departed, however, Officer Grisholm pulled his patrol car behind the cab whereupon appellant asked, "Do you want me?". Appellant asserted that Officer Grisholm "replied in the affirmative, asked what was in the bag he was carrying, snatched the bag, and open [sic] it." Throughout his testimony, appellant denied that he tried to conceal the bag or that he raised the bag and pointed it at Officer Grisholm.

After the hearing, Judge Ross dismissed the motion to suppress, stating:

Well, the motion to suppress is denied. I agree that the story is not without its unusual aspects, but the burden is

---

1. Appellant testified he was wearing approximately $3,000.00 worth of gold jewelry at the time.

what is more likely so than not so, and the officer gave all the appearances of testifying honestly and his story is not that different from the defendant's story.

The only question is, what happened with the hands, and the defendant, in a rather weak way, sort of tried to explain, well, maybe I was swinging it with one hand in front of me, but there is no—more likely so than not so that this officer honestly felt that he was being threatened by what was in that bag, and he took steps necessary to protect himself in the circumstances, resulting in recovery of the bag, which I see no distinction between patting down a bag that was acquired in the way this was acquired, and patting it down to see what it is, than patting down the individual, except that the bag was separated from the individual, but once having been confronted with the threat and taking reasonable steps to protect himself, I think it is not unreasonable to feel the bag, and having felt the bag, determined, and determined that it could be a handgun, to open the bag and confirm then and there that it was.

The case then proceeded on an agreed statement of facts. At the close of the trial, the trial judge found appellant guilty of unlawfully transporting a handgun.

The sole issue appellant raises on appeal is whether the trial court erred in denying appellant's motion to suppress the handgun. Appellant asserts three reasons in support of his contention of error.

1.  The officer did not have a reasonable belief that appellant was armed and dangerous.

2.  Assuming that the seizure of the bag was lawful, the warrantless search of the bag was improper.

3.  The warrantless search of the bag was prohibited by Art. 27, Sec. 36D.

We will address each of these arguments in turn.

I. *Protective Search*

Appellant's first argument is that Officer Grisholm did not have a reasonable belief that appellant was armed

and dangerous. Rather, appellant asserts that the officer's actions were based on "his inchoate and unparticularized suspicion or hunch." Appellant cites *Whitmire v. State*, 61 Md.App. 548, 487 A.2d 686 (1985) in support of his contention.

In *Whitmire*, the police stopped Ronald Jerome Whitmire based on information relayed by radio bulletin. The police directed him to exit the stopped vehicle and place his hands on the car roof. The police then patted him down. During the pat down search, the police officer felt a hard cylindrical object in his trouser pocket that subsequently was discovered to be a roll of dimes. A rosary and assorted papers were removed from Whitmire's other pockets during the search. In addition, while checking Whitmire's vehicle for weapons, the police discovered a pewter disk, screwdrivers and a flashlight. Whitmire was then placed under arrest for burglary and theft of goods worth less than $300. The goods recovered were identified by the burglary victim as belonging to her. *Id.* at 551, 487 A.2d 686.

Prior to trial, Whitmire sought to have the evidence recovered from his person suppressed as the fruits of an illegal search. The right to conduct a limited search for weapons was not contested by Whitmire. Instead, he argued that "after the frisk, the officer conducted a general exploratory search for evidence rather than a limited search for weapons." After considering the arresting officer's testimony,[2] the court concurred with Whitmire's assertion that the officer's explanation that he was conducting the search to look for weapons was mere subterfuge. The

---

2. The officer explained:

   It [the cylinder] felt hard with some spaces in it, just like there was something in there. I just didn't know what it was.

   .          .          .

   [W]e removed the items from their pockets, just to make sure that they weren't things other than what they appeared to be, like a concealed knife inside the container that the dimes was in; the rosary could have been a chain with razor blades on it; the papers could have had razor blades.

   *Whitmire*, 61 Md.App. at 552, 487 A.2d 686.

court explained that, "Absent a *reasonable* belief that appellant was armed, the seizure of the bag was not warranted under *Terry.*" *Id.* at 552, 487 A.2d 686 (emphasis in original).[3]

It is clear then that *Whitmire* is inapposite to the case *sub judice.* It is the function of the trial court to "evaluate the reasonableness of a particular search or seizure in light of the particular circumstances." *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In *Whitmire,* the court found that the officer's testimony explaining the reason for his extensive weapons search was less than credible. *See* 61 Md.App. at 552, 487 A.2d 686. In the case at bar, however, the trial judge concluded that "the officer gave all the appearances of testifying honestly and his story is not that different from the defendant's."

While an appellate court is required to make its own independent determination of the constitutional effect of the facts found by the lower court, *Ciriago v. State,* 57 Md. App. 563, 573, 471 A.2d 320, *cert. den.,* 300 Md. 152, 476 A.2d 721 (1984), in evaluating the credibility of witnesses, the appellate court "must give great weight to the findings of the trial judge with respect to those first level facts." *Borgen v. State,* 58 Md.App. 61, 79, 472 A.2d 114 (1984). A review of the evidence indicates that the trial court's finding that Officer Grisholm reasonably believed appellant was armed and dangerous is amply supported and not clearly erroneous. As we explained in *Borgen:*

> An appellate court can reject the testimony of a witness credited by the triers of the fact only when the testimony is inherently improbable. There must exist a physical impossibility that the statements of the witness are true

---

**3.** The court, however, declined to hold that the evidence must be suppressed. Instead, the court held that notwithstanding the possible Fourth Amendment violation, the evidence would have been discovered inevitably when he was placed under arrest or during an inventory search once he was brought to the station. *Id.* at 552–554, 487 A.2d 686. Thus, under the doctrine of inevitable discovery, the evidence recovered on Whitmire's person was admissible.

or their falsity must appear without resorting to inferences or deduction. The appellate court may not substitute its judgment with respect to the credibility of a witness for that of the jury and trial judge on the ground that the evidence is inherently improbable unless it is so clearly false and unbelievable that reasonable minds may not differ.

*Id.* (citations omitted).

Accordingly, we now hold that Officer Grisholm's seizure of the bag was justified under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), as a limited protective search based on a reasonable belief that the subject is "armed and presently dangerous." *Id.* 392 U.S. at 24, 88 S.Ct. at 1881. *See also State v. Ortiz,* 67 Hawaii 181, 683 P.2d 822, 826 (1984) (seizure of knapsack reasonable as protective search where officer "had a strong firsthand suspicion the knapsack contained the most dangerous of weapons, a handgun"); *Crowder v. United States,* 379 A.2d 1183, 1185 (D.C.App.1977) (seizure of newspaper during *Terry* stop was reasonable where "the policeman could fairly conclude that appellant's nervous manner and his attempt to shield the newspaper from view indicated the presence of a weapon"); *Nash v. State,* 295 A.2d 715, 716 (Del.1972) (seizure of box reasonable where officer feared for his life because he "recognized the box as possibly containing a weapon, a pistol"); *People v. Pugach,* 15 N.Y.2d 65, 255 N.Y.S.2d 833, 836, 204 N.E.2d 176, 178 (1964), *cert. den.,* 380 U.S. 936, 85 S.Ct. 946, 13 L.Ed.2d 823 (1965) (inclusion of brief case in "frisk" for weapons was "not so unreasonable as to be constitutionally illegal").

## II.  *Search of Appellant's Bag*

■ Having a strong suspicion that he was about to be shot, Officer Grisholm seized appellant's bag and immediately felt "a hard object, possibly a gun in it." Appellant argues that even if, as we hold, the bag was lawfully seized during a protective search, once Officer Grisholm had

gained "exclusive control" over the bag, he was not authorized to open it because he was no longer in danger.

Although appellant's argument may prevail under other facts and circumstances, *see generally* LaFave, 3 *Search and Seizure*, § 9.4(e), at 527 (2d ed. 1987), we hold that under the facts at bar Officer Grisholm acted within the scope of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and did not violate appellant's constitutional rights. When a police officer lawfully conducting a protective search reasonably believes a gun is concealed in the detainee's bag, the officer remains vulnerable and in danger if the bag is returned and the detainee released at the conclusion of the investigative stop. *LaFave, supra,* at n. 158.

*Terry* recognized that it would be "clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." 392 U.S. at 24, 88 S.Ct. at 1881. In *Terry*, the police officer, while patting down the outer clothing of the suspects, felt a pistol in the left breast pocket of Terry's overcoat.

> He reached inside the overcoat pocket, but was unable to remove the gun. At this point, keeping Terry between himself and the others, the officer ordered all three men to enter Zucker's store. As they went in, he removed Terry's overcoat completely, removed a .38 caliber revolver from the pocket, and ordered all three men to face the wall with their hands raised.

*Id.* at 7, 88 S.Ct. at 1872.

As the State has noted, appellant's reasoning conflicts with *Terry*. The police officer, by removing Terry's coat, had reduced it to his exclusive control before removing the gun and had thereby eliminated the need for a protective search. Clearly, however, the U.S. Supreme Court did not find that the removal of Terry's coat had "neutralized the threat of physical harm." *Id.* at 24, 88 S.Ct. at 1881.

In both *Terry* and the case at bar, the police officer had a specific articulable suspicion as to the item being searched. Once the offensive item is properly seized, the further act of searching for what the officer reasonably believes is a gun is only a *de minimis* additional intrusion on the detainee's privacy interest. The police officer's legitimate interest in self-protection greatly outweighs the detainee's right to prevent this minimal intrusion.

In *Williams v. State*, 19 Md.App. 204, 310 A.2d 593 (1973), we said that a police officer making a protective search of a person was not limited to the detainee's person but to the area "within 'the lunge,' 'the grasp,' 'the reach' of the suspect—that area 'which may fairly be deemed to be an extension of his person.'" *Id.* at 214, 310 A.2d 593 (citing *United States v. Rabinowitz*, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950) (Frankfurter, J., dissenting). Applying that standard, we held that "the bag on the floor of the automobile, which seconds before had been seen between the feet of this suspected holdup man and which was within a few feet of him as he stood immediately outside the opened car door, fell within that perimeter of a reasonable 'frisk'." *Id.* 19 Md.App. at 214, 310 A.2d 593. The facts in the present case even more strongly justify the reasonableness of the "frisk" of the bag than in *Williams*. In the case at bar, appellant was *holding* the bag, whereas in *Williams* the frisked bag was merely within the detainee's lunge, reach, or grasp.

In *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), the U.S. Supreme Court held that a protective search of the passenger compartment of a car is permissible under *Terry*. In so holding, the court stressed a police officer's need, during a *Terry* stop, to make "a quick decision as to how to protect himself and others from possible danger.... In such circumstances, we have not required that officers adopt alternative means to ensure their safety in order to avoid the intrusion involved in a *Terry* encounter." *Id.* 463 U.S. at 1052, 103 S.Ct. at 3482 (citations omitted). Appellant's theory would prohibit a

vehicle search inasmuch as the police officer need only ask the car's occupants to stand away from the vehicle during the detention period. The officer would then be at no greater risk of harm from a weapon in the vehicle than from one in a bag taken from the detainee.

Thus, appellant's argument fails because of its focus on too limited a point in time. By removing the suspect from the reach of what may contain a weapon—be it an automobile or a handbag—the police officer is only temporarily safe. The risk of harm to the officer does not end with the patdown; it continues so long as the police officer is within shooting range of the suspect. If no weapon is found on the suspect's person and he is given access to the "container," the purpose of the *Terry* frisk is defeated because the officer is once again at risk.

The precise argument presented by appellant was raised before the Supreme Court of Hawaii in *State v. Ortiz*, 67 Hawaii 181, 683 P.2d 822 (1984). In *Ortiz*, an officer driving alone in a marked police car observed Ortiz carrying a knapsack in an empty parking lot adjacent to some business establishments. When Ortiz saw the police car he ran. The officer found Ortiz hiding and asked him what he was doing there. Ortiz responded that he didn't know. When the officer asked who the knapsack belonged to, Ortiz said it was his. When asked what was in it, Ortiz said, "nothing" and grabbed for the knapsack. *Id.* at 683 P.2d at 824. Feeling "something was wrong," the officer reached down and took the sack from Ortiz, whereupon he immediately felt "what seemed like a butt to a handgun." The officer then unzipped the knapsack, verified its contents, and placed Ortiz under arrest. *Id.*

Prior to trial, Ortiz moved to suppress the gun as evidence "contending that once a law enforcement officer reduces personal property to his possession, the officer may not search the property either as incident to a valid investigative stop or as incident to a lawful arrest." *Id.* (citations omitted). The State countered Ortiz's motion to suppress by asserting that the warrantless search was justified as a

protective search for weapons under *Terry,* as incident to an arrest, and under a "plain feel" or "plain touch" analogy of the "plain view" exception.[4] *Id.* The trial court granted the motion to suppress. *Id.* 683 P.2d at 825. The Intermediate Court of Appeals held the search valid under the plain feel doctrine. *Id.* The Supreme Court of Hawaii, while vacating the intermediate court's "plain feel" ruling, affirmed under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *Id.* 683 P.2d at 824.

The Supreme Court of Hawaii began its opinion with the premise that "warrantless searches are presumptively unreasonable unless they fall within a specifically-established and well delineated exception to the warrant requirement." *Id.* 683 P.2d at 825. The exception that the Hawaii supreme court held applicable was "the protective search for weapons incident to a valid investigative stop, first announced in *Terry,* 392 U.S. at 30–31 [88 S.Ct. at 1884–1885]." *Id.*

The *Ortiz* court then held further that a search of the knapsack for a weapon was valid even though it had been removed from the detainee's immediate control. The court explained:

[W]ithout searching the knapsack Bennett was in a catch–22 situation: if he arrested Ortiz and seized the knapsack on a suspicion it contained an unlicensed gun he might have made an illegal arrest and seizure on less than

---

**4.** *See generally* Note, *The Case Against a Plain Feel Exception to the Warrant Requirement,* 54 U. Chicago L.Rev. 683 (1987). Some courts have recognized that a police officer may develop probable cause that they have inadvertently *felt* evidence of a crime during a prior valid intrusion, just as police can develop probable cause to believe that they have inadvertently spotted evidence of a crime during a prior valid intrusion (the basis of the plain view exception). *See United States v. Russell,* 655 F.2d 1261, 1264 (D.C.Cir.1981) (search of bag containing a gun was justified "because the contents of the package could be inferred the moment the bag was seized"); *United States v. Ocampo,* 650 F.2d 421, 429 (2nd Cir.1981) (contents of bag could be examined under plain feel exception where the contents are easily discernible by frisking the exterior). The "plain feel" theory was not raised in this appeal; therefore, we refrain from deciding the validity of a "plain feel" rule.

probable cause, but if he returned the bag unopened to Ortiz he put his life in danger. The only safe thing to do was open the knapsack, verify its contents, and arrest Ortiz.

Although the trial and intermediate courts thought Bennett had probable cause to arrest Ortiz the instant he suspected he felt a gun butt, we are not so certain. Bennett could not be positive the knapsack contained a gun until he opened it....

Given the closeness of the question we find Bennett had a legitimate interest in searching the knapsack. Police officers need not risk a shot in the back by returning containers which they reasonably suspect contain a dangerous weapon but may lack probable cause to seize. *See,* 3 LaFave, *Search and Seizure* § 9.4(d) at 132–133 & n. 128 (1978). As the United States Supreme Court has noted, "the policeman making a reasonable investigatory stop should not be denied the opportunity to protect himself from attack by a hostile suspect. *Adams v. Williams,* 407 U.S. [143] at 146, 92 S.Ct. [1921] at 1923 [32 L.Ed.2d 612 (1972)].

Against Officer Bennett's interest in searching the knapsack, we must weigh Ortiz's interest in freedom from unreasonable police intrusions. A knapsack is, generally speaking, a recognized repository for personal effects and therefore deserves constitutional protection.... However, once Officer Bennett had properly seized the knapsack and inadvertently felt what he thought might be a gun, his further act of opening it was a *de minimis* intrusion on Ortiz's privacy.

683 P.2d at 827.

We agree with the *Ortiz* court's reasoning and find that under the facts and circumstances of the case *sub judice,* Officer Grisholm's *Terry* stop and frisk of appellant was reasonable and, therefore, not in violation of the Fourth Amendment, we hold that the further act of opening the bag to confirm the bag's dangerous contents was a reasonable *de minimis* intrusion upon appellant's rights. *Accord*

*United States v. McClinnhan,* 660 F.2d 500 (D.C.Cir.1981) (briefcase); *United States v. Johnson,* 637 F.2d 532 (8th Cir.1980) (duffel bag); *United States v. Foster,* 584 F.2d 997 (D.C.Cir.), *cert. denied,* 439 U.S. 1006, 99 S.Ct. 620, 58 L.Ed.2d 682 (1978) (paper bag); *United States v. Vigo,* 487 F.2d 295 (2nd Cir.1973) (purse); *United States v. Poms,* 484 F.2d 919 (4th Cir.1973) (shoulder bag); *United States v. Berryhill,* 445 F.2d 1189 (9th Cir.1971) (purse); *State v. Ortiz,* 67 Hawaii 181, 683 P.2d 822 (1984) (knapsack); *Bromwell v. State,* 427 A.2d 884 (Del.1981) (cardboard box); *Nash v. State,* 295 A.2d 715 (Del.1972) (small box); *Henighan v. United States,* 433 A.2d 1059 (D.C.App.1981) (purse); *People v. Bowles,* 29 A.D.2d 996, 289 N.Y.S.2d 526 (1968) (unworn trousers) and *People v. Pugach,* 15 N.Y.2d 65, 255 N.Y.S.2d 833, 204 N.E.2d 176, *cert. denied,* 380 U.S. 936, 85 S.Ct. 946, 13 L.Ed.2d 823 (1965) (briefcase).

Police officers are routinely exposed to extreme danger when approaching suspected criminals. The law requires probable cause before an officer is allowed to arrest such persons. The law does not, however, require officers with articulable suspicion to put potentially armed criminals back on the streets simply because there is no probable cause to arrest them. In circumstances where a police officer has a reasonable, articulable suspicion that a suspected criminal is armed and dangerous, under *Terry,* the policeman may search him for the limited purpose of disarming him. *See* Gilbert & Moylan, *Maryland Criminal Law: Practice & Procedure* § 33.4 (1983). That is what was done in this case.

III. *Article 27, § 36D.*

■ Appellant's final argument is that the warrantless search of his bag was prohibited by Md.Ann. Code art. 27, § 36D (1982).[5] Specifically, appellant argues that:

---

**5.** Article 27, § 36D of the Code provides, in pertinent part:
 (a) Any law-enforcement officer who, in the light of his observations, information, and experience, has a reasonable belief that (i) a

[A] search for a handgun under § 36D is "limited to a patting or frisking of the person's clothing." The search of Appellant's bag plainly exceeded that limitation. Thus, as in *Anderson v. State*, 282 Md. [701] at 704 n. 2 [387 A.2d 281 (1978)], "[t]here is no question but that the police did not comply with the provisions of the statute."

Appellant's third argument misses the mark. Although article 27, § 36D(a)(4) limits the frisk of a person to a "patting or frisking of the person's clothes in search of a handgun," that section does not absolutely preclude all other searches. To the contrary, article 27, § 36D(c) specifically states that "nothing in this section shall be construed to limit the right of any law-enforcement officer to make

person may be wearing, carrying, or transporting a handgun in violation of § 36B of this article, (ii) by virtue of his possession of a handgun, such person is or may be presently dangerous to the officer or to others, (iii) it is impracticable, under the circumstances, to obtain a search warrant; and (iv) it is necessary for the officer's protection or the protection of others to take swift measures to discover whether such person is, in fact, wearing, carrying, or transporting a handgun, such officer may

(1) Approach the person and identify himself as a law-enforcement officer;

(2) Request the person's name and address, and, if the person is in a vehicle, his license to operate the vehicle, and the vehicle's registration; and

(3) Ask such questions and request such explanations as may be reasonably calculated to determine whether the person is, in fact, unlawfully wearing, carrying, or transporting a handgun in violation of § 36B; and, if the person does not give an explanation which dispels the reasonable belief which he had, he may

(4) Conduct a search of the person, limited to a patting or frisking of the person's clothing in search of a handgun. The law-enforcement officer in acting under this section shall do so with due regard to all circumstances of the occasion, including but not limited to the age, appearance, physical condition, manner, and sex of the person approached.

(b) In the event that the officer discovers the person to be wearing, carrying, or transporting a handgun, he may demand that the person produce evidence that he is entitled to so wear, carry, or transport the handgun pursuant to § 36B(c) of this article. If the person is unable to produce such evidence, the officer may then seize the handgun and arrest the person.

any other type of search, seizure, and arrest which may be permitted by law." Md.Ann. Code art. 27, § 36D(c) (1982).

Inasmuch as we have upheld the search of the bag as proper under *Terry, see supra* II, we hold that the warrantless search of appellant's bag did not violate Md.Ann. Code art. 27, § 36D(a)(4) (1982). The "frisk" of the bag did not extend beyond the danger it was designed to prevent. *See Williams,* 19 Md.App. at 214, 310 A.2d 593. Thus, it was reasonable under the Fourth Amendment and did not offend section 36D.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.