AUBREY MERCER *v.* STATE OF MARYLAND

[No. 263, September Term, 1968.]

*Decided March 18, 1969.*

*Raymond M. Faby,* with whom was *Nathan Stern* on the brief, for appellant.

*John J. Garrity, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *I. Elliott Goldberg, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

Aubrey Mercer, the appellant, was convicted of grand larceny in the Criminal Court of Baltimore, Judge Paul T. Pitcher presiding without a jury. Mercer was sentenced to a term of six years under the jurisdiction of the Department of Correction. He now contends that certain evidence should not have been admitted because its seizure was the result of an illegal arrest and further that the evidence was insufficient to support the verdict.

On October 28, 1967, two Baltimore City Police Officers observed a 1951 Chevrolet truck occupied by three males carrying numerous copper pipes underneath wooden poles. As the pipes,

which extended beyond the end of the truck by approximately four feet, did not have a red flag attached as required by law, Md. Code Art. 66½ § 275 (Repl. Vol. 1967), the policemen stopped the vehicle. As the truck was pulled to the curb one of the occupants jumped from the vehicle and attempted to run away. One of the police officers grabbed him but the man broke away. The police officers gave the driver of the truck a ticket for not having a red flag on the pipes. The driver of the truck, one Wardell Proctor, told the two police officers that the man who had run away was the owner of the pipes and that he had asked them to help him take the pipes to be sold and that the pipes had been found in a trash can. Mercer stated that he did not know who the man was that ran away and did not know anything about the twelve foot long copper pipes. The officers observed that the 23 twelve-foot long copper pipes were attached together by a band and appeared new. The officers placed Proctor and Mercer, who was the third man in the truck, under arrest. Upon arrival at the police station the police unloaded the pipes and found attached a Bethlehem Steel Company tag.

Leonard Gartrell, supervisor for Bethlehem Steel Company, identified the pipes from the tag and placed the value at around eight to nine hundred dollars. The storage area for Bethlehem Steel was examined and it was discovered that the fence securing the yard had been pried open and that the pipes in the upper storage rack were missing. The tag number on the pipes found on the 1951 Chevrolet truck was of the same lot number as those pipes that were found on the lower rack at the storage yard. Both Mercer and Proctor testified and explained that they were flagged down by a man with the pipes, but that they did not know the man, and that he wanted them to help take the pipes to a junk yard to sell. Mercer, who had previously been a self-employed junkman, informed the court that the pipes looked like junk to him. Mercer had a rather long record of prior convictions.

The first contention of Mercer is that the arrest was invalid. He concedes that a police officer may arrest without a warrant for a misdemeanor if he has probable cause to believe that a misdemeanor is being committed in his presence and that the arrestee is the misdemeanant. *Ramsey v. State,* 5 Md. App.

563, 567, 248 A. 2d 659. In the case at bar the police officers saw the truck being operated in apparent violation of Md. Code Art. 66½ § 275; therefore they had the proper authority to stop the truck. *State v. Sedacca,* 252 Md. 207, (1969).[1] The precise issue here, however, is whether or not all of the circumstances could supply probable cause to believe that the copper pipes were stolen. Since the officers had no prior knowledge of the crime the probable cause, if it existed, has to be found in what came to the officers' senses at the time of the arrest. And this information must, of course, be much stronger than if the prior knowledge had existed. We had occasion to review the law on this subject recently in the case of *Brown v. State,* 5 Md. App. 367, 247 A. 2d 745 wherein we found the officers did not, in the absence of prior knowledge of the crime, have probable cause to support an arrest. We said at 5 Md. App. 367, 247 A. 2d 747:

> "To the arresting officer, as perhaps to any reasonably cautious citizen, the sight of a man pushing a baby carriage on a parking lot at 4:45 A.M. on a Sunday morning was unusual and, undoubtedly, created a suspicion in the officer's mind that all was not right. Likewise, after listening to the appellant's explanation and his refusal to give his address, the officer's suspicion may have heightened. But the officer himself readily conceded that he was unaware that the church or any other building had been broken into that night. Thus, one of the essential ingredients of the rule of probable cause—reasonable grounds to believe that a felony had been committed—was not within the knowledge of the officer unless it can be said that a reasonably cautious man, under the facts within the officer's purview, would have had probable cause to believe that a felony had been committed and that the felony had been committed by the appellant. Measured by this standard, we are of the opinion that the facts and circumstances within the officer's knowledge would not compel a rea-

---

1. It is not contended that Mercer had no standing to object to the search or to the seizure. See *Glisson v. United States,* 406 F. 2d 423, 4 CrL 2364 (5th Cir.).

sonably cautious man to conclude that a felony had
been committed, since the known conduct of the appel-
lant at the time of the arrest was, at the least, equally
consistent with innocent travel on a public thorough-
fare."

And we said at 748:

"It is evident that the line is not easy to draw. It must
be drawn on a case by case basis. Where it will be
drawn can only be determined after a careful analysis
of the facts and circumstances of each case which re-
quires the striking of a balance between the Constitu-
tional right of the individual to be free of unwarranted
molestation and the requirements of society to be pro-
tected from the ravages of the criminal."

Although the facts in *Brown* are strikingly similar to the case
at bar there is one important difference which we consider con-
trolling. In *Brown* the evidence of flight was nebulous, but here
the evidence of flight by one of the persons involved was un-
questioned. In view of the high price of copper today it would
seem that any officer would have known that the pipe was worth
more than $100 and thus that grand larceny, a felony, had been
committed instead of petty larceny, a misdemeanor. The state
did not develop, in the record, the officers' knowledge, how-
ever. This failure is not crucial because the officers did observe
the stolen merchandise being asported and had reasonable
grounds to believe that a misdemeanor, at least, was being com-
mitted in their presence. The arrest for theft being lawful it
follows that the subsequent search and seizure were lawful and
that the evidence was properly admitted.

The appellant next contends that the evidence was not suffi-
cient to support his conviction. It is a well established rule "in
Maryland that in absence of a satisfactory explanation the ex-
clusive possession of recently stolen goods permits the drawing
of an inference of fact sufficient to sustain a conviction that the
possessor was the thief." *Burkett v. State,* 5 Md. App. 211,
218, 245 A. 2d 911, *Sweeting v. State,* 5 Md. App. 623, 629,
249 A. 2d 195. The Court of Appeals and this Court have held

that exclusive possession can be joint. *Burkett v. State, supra,* and the cases therein cited. Under the circumstances we think the trial judge was not clearly erroneous when he concluded that Mercer had possession of the pipes and that such possession was sufficient to give rise to an inference of fact that Mercer was the thief. Maryland Rule 1086.

*Judgment affirmed.*