502 A.2d 510

**Willis T. PARKER**

v.

**STATE of Maryland.**

**No. 13, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Jan. 10, 1986.

Certiorari Denied April 18, 1986.

Robert M. Bell, J., dissented and filed opinion.

2

Barbara L. Matthews, Assistant Public Defender (Alan H. Murrell, Public Defender, on brief), Baltimore, for appellant.

Nicolette H. Prevost, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Kurt L. Schmoke, State's Atty. for Baltimore City and Ruth Finch, Asst. State's Atty. for Baltimore City, on brief), Baltimore, for appellee.

Argued before ALPERT and ROBERT M. BELL, JJ., and JAMES S. GETTY, Associate Judge of the Court of Special Appeals (retired), specially assigned.

ALPERT, Judge.

In this appeal we are called upon to determine what constitutes "reasonable grounds to believe that the person [charged with the traffic violation] will disregard [the] traffic citation," and whether subjecting that person to a warrantless arrest for a traffic violation was illegal.

Willis T. Parker, appellant, having been found guilty in the Circuit Court for Baltimore City of possession of cocaine with intent to distribute, contends on appeal that:

The court erred in denying appellant's motion to suppress the drugs and money seized from appellant's pocket and from the car.

We disagree and shall affirm.

Transportation Article, § 26–202(a)(2) (1984 Repl.Vol., 1985 Supp.) provides in pertinent part that:

A police officer may arrest without a warrant a person for a violation of the Maryland Vehicle Law, ... if ... the person has committed or is committing the violation within the view or presence of the officer, and either: (i) the person does not furnish satisfactory evidence of identity;  or (ii) the officer has reasonable grounds to believe that the person will disregard a traffic citation.

It was pursuant to subsection (a)(2)(ii) that Officer John J. Fabula arrested the appellant on August 29, 1984, after concluding that he was operating a motor vehicle without an operator's license.  Upon a search incident to the arrest, Officer Fabula recovered from the appellant's right pants pocket a small clear plastic bag with some rice and five

**4**

gelatin capsules containing a white powder which he believed to be cocaine. The officer then conducted a search of the vehicle which the appellant had been operating and recovered a bag which contained a large clear plastic bag with rice and twenty gelatin capsules, again containing a white powder which the officer thought was cocaine. Subsequently, appellant was charged, by criminal information, with possession of cocaine with intent to distribute, and on February 4, 1985, a suppression hearing was held in the Circuit Court for Baltimore City, the Honorable Marshall Levin presiding. At that hearing both Officer Fabula and the appellant gave conflicting testimony concerning the arrest and subsequent search and seizure. For reasons more particularly stated in the record, Judge Levin resolved the conflicts in favor of the police officer. As factfinder, he believed the testimony of Officer Fabula over that of the appellant.

The officer's testimony revealed that on August 29, 1984, at about 2:50 p.m., in the 700 block of Cumberland Street in Baltimore City, he observed the appellant driving an automobile without a left rear brakelight. He followed and eventually stopped the car. As he approached the vehicle, he observed the appellant nervously and quickly roll a paper bag and place it in the console of the automobile. When he asked the appellant for his driver's license and registration for the vehicle, the appellant "became somewhat nervous and he exited the car for no reason and walked to the front of the vehicle." The officer further testified:

> He had no reason to exit the car like that. I was surprised when he got out and walked fast like that, and for a moment I thought he was going to run so I quickly walked behind him.

Again, Parker was asked for his license and registration and responded that he should not be driving the vehicle and that he had no driver's license or registration. When asked for any other identification, he produced a "prison ID which contained his picture but no address." Appellant continued his nervous behavior, *i.e.*, "he was rubbing his face, and

walking to the front of the car and repeating, 'Man, I should not have been driving the car, and all that's stuff, you know, you got me.'" Additionally, the officer thought that the appellant "was on something"—*i.e.*, some type of controlled dangerous substance, because the officer could discern no odor of alcohol, appellant's eyes were watering, he was talking fast and rubbing his eyes and nose. The officer determined via the police radio that the vehicle was not reported stolen and that the appellant had no driver's license. He placed him under arrest, initially testifying that:

> Because I didn't think that everything was going together ... as far as his attitude, nervousness, he was placed under arrest for no Maryland driver's license, the ID part of it.

Further on in the hearing, the officer testified that he thought the appellant might not show up for trial, or that he might run away because of "his attitude, your Honor, the nervousness." At an even later point in the hearing, Officer Fabula stated that he arrested the appellant because: "I thought he was not going to make the ticket good, your Honor." When asked by the court why he felt that way, he responded, "Just that one piece of ID, your Honor [the prison card]."

After carefully summing up the testimony and evidence, Judge Levin overruled the motion to suppress, succinctly setting forth his reasons:

> So now the question finally is, if I do believe him, was he reasonable when he says that he felt that the defendant would not show up.
>
> Well the defendant, to the officer's mentality, was driving a car when he had no business driving that car. He did not have a license to drive it.
>
> Number two, he was nervous.
>
> Number three, he did not supply that degree of evidence as to his identity, which includes, I find, his address, to put the officer's mind at ease.

Next that he showed him a card which showed he had been in prison.

Next, that he made a suspicious move of putting a bag and attempting to hide from the officer's view, a bag.

Now it is true that the officer did not know what the bag had in it, but I find that all of these factors together furnish objective reasonable ground to believe that he would not show up, that he would disregard the traffic citation.

In asserting that the trial judge erred in admitting the evidence, appellant launches a two-pronged attack claiming first, that the arrest was illegal, and second, that even if the arrest was legal, the "inventory search" of the car was illegal.

## I. *Legality of the Arrest*

Appellant contends that the arrest was illegal because it was not based upon a reasonable belief that the appellant would ignore the traffic citation. He argues that an arrest for a minor traffic violation cannot be used as an investigative tool merely because the police officer suspected that everything was not "going together." What constitutes "reasonable grounds to believe that the person will disregard a traffic citation" has never been interpreted by our appellate courts. In this case of first impression, we have no difficulty in determining the intention of the legislature when it chose those words. We need look no further than the statute itself.

First, we observe that for the more serious offenses, such as driving while intoxicated, driving while under the influence of any drug, failure to stop in the event of an accident and driving on a revoked license, § 26–202(a)(3), a police officer may immediately arrest the alleged offender without regard to concerns of identity or belief that the person will disregard the traffic citation. With that in mind, we observe that the legislature contemplated situations where, in order to enforce less serious traffic laws, it would be

necessary to insure the appearance of the defendant at trial. Thus, where the person has not furnished satisfactory evidence of identity or where the officer otherwise had reason to believe that the person would disregard the citation, that is, not appear for trial, the officer could arrest on the spot.

■ Because we have no difficulty in holding that "reasonable grounds to believe" is tantamount to "probable cause" to believe, *Graham v. State*, 13 Md.App. 171, 177, 282 A.2d 162 (1971), *cert. denied*, 264 Md. 748 (1972), we may rely on the definition of "probable cause" as the barometer for determining whether Officer Fabula had "reasonable grounds to believe" that the appellant would not appear for trial. "Probable cause has been defined as a non-technical conception of a reasonable ground for a belief of guilt requiring less evidence for such belief than would justify conviction, but more evidence than mere suspicion." *Cuffia v. State*, 14 Md.App. 521, 525, 287 A.2d 319 (1972), *cert. denied*, 265 Md. 736. Its existence, justifying an arrest without a warrant, must be determined by factual and practical considerations of everyday life on which reasonable and prudent persons, not legal technicians, act. 5 Am.Jur.2d, *Appeal and Error* § 48 (1962). As the Supreme Court said in *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), "in dealing with probable cause, . . . as the very name implies, we deal with probabilities." *Id.* at 175, 69 S.Ct. at 1310. And we note that one definition of the word "probable" is "that which is likely to be so, or more likely to occur than not to occur." *Webster's New Twentieth Century Dictionary* 1433 (Unabridged 2d ed. 1977).

■ Returning to the definition set forth in *Cuffia*, we believe that it is fair to say that the establishment of "probable cause" requires more than mere suspicion but less than belief "beyond a reasonable doubt" (the standard for a finding of guilt). Thus, we find ourselves dealing with a standard that perhaps we could characterize as being

in the middle ground: the belief that what is alleged to have occurred was more likely so than not so.

In the multitude of cases where "probable cause" has been evaluated, courts have dealt with it in the context of whether a police officer *had* probable cause to believe that a felony or misdemeanor *had* been or was being committed. It has been said that such determination of

> probable cause is not to be evaluated from a remote vantage point of a library, but rather from the viewpoint of a prudent and cautious police officer on the scene at the time of the arrest. The question to be answered is whether such an officer in the particular circumstances, conditioned by his observations and information, and guided by the whole of his police experience, reasonably could have believed that a crime had been committed by the person to be arrested....

*Patterson v. United States,* 301 A.2d 67, 69 (D.C.1973). *See also VonSleichter v. United States,* 472 F.2d 1244, 1248 (D.C.Cir.1971); *Davis v. United States,* 409 F.2d 458, 460 (D.C.Cir.1969), *cert. denied,* 395 U.S. 949, 89 S.Ct. 2031, 23 L.Ed.2d 469.

Thus, it is apparent that in the usual evaluation of "probable cause," we are analyzing the officer's judgment as to something that has either already occurred or is occurring contemporaneously. He must consider that which he sees and hears or has seen and heard, evaluate it, synthesize it, and determine whether criminal activity is occurring or has occurred and whether the person that he would arrest is the perpetrator.[1]

---

1. As stated by one prominent textwriter:
   > The Supreme Court has made it clear that the expertise and experience of the officer are to be taken into account in applying the Fourth Amendment probable cause test. This is as it should be, for there "would be little merit in securing able, trained men to guard the public peace" if their actions were to be "measured by what might be probable cause to an untrained civilian."

In the instant case, although we still view the circumstances from that of the "prudent and cautious police officer on the scene," and consider whether the particular circumstances, his observations and information, guided by the whole of his police experience, would reasonably cause him to believe that the offender would not appear, we are dealing here not with suspected past or present criminal activity. Rather, we are dealing with a forecast that the suspect will "probably" fail to appear for trial in the future.

On the question of disregard of the traffic citation, he must ask himself, "Is that more likely to occur than not to occur?" His task is similar to that of a medical doctor making a "prognosis."[2] Quite naturally, his prognostic ability is a reflection of his training, experience and intelligence, all of which contribute to his ability to reason.

Essentially, therefore, we are asked to extend the "reasonable grounds—probable cause doctrine," which generally is invoked retrospectively, to situations where it is invoked prospectively.

█ Against that backdrop, we must determine whether the trial judge's conclusion of reasonableness was correct. We hold that it was and shall explain our reasons.

It is uncontroverted that the appellant committed a traffic violation: driving without an operator's license, within the view or presence of the officer. Therefore, the only legal question before us to be viewed under our own "independent reflective constitutional judgment," *Dixon v. State,* 23 Md.App. 19, 327 A.2d 516 (1974), is, as correctly stated by the trial judge:

---

> In the usual case, this means that a trained and experienced officer will have probable cause in circumstances when the layman would not.

W. LaFave, *Search and Seizure,* § 3.2 at 462 (1978) (citations omitted).

**2.** [A] forecast or forecasting; especially, in medicine, a judgment in advance concerning the *probable* cause of a disease and the chances of recovery.

*Webster's New Twentieth Century Dictionary,* supra at 1438 (emphasis added).

Whether the officer had reasonable grounds to believe that the appellant would disregard the traffic citation.

Appellant argues here, as he did below, that the purpose of his arrest was not to insure that he would appear for trial, but because the officer suspected something illegal was occurring when the appellant placed the bag into the console and put the lid on the console chamber down. Appellant suggests that the arrest was a subterfuge; that it was an investigative tool because the officer suspected criminal activity.[3]

Further, the appellant somewhat boldly but obliquely suggests that the court's ruling was not really based on the five "facts" indicated in its oral opinion, but rather on the officer's suspicion of illegal activity and the possibility in the mind of the officer that the evidence would disappear if he permitted appellant to leave the scene rather than placing him under arrest. The police officer, in response to questioning by the court, stated that he arrested the appellant because he believed that he would not "make good on the ticket." At this point he was "eyeball to eyeball" with the trial judge. The trial judge had the opportunity to judge his credibility. While the appellant may doubt the officer's sincerity and credibility as to that statement, we must defer to the trial judge's findings of fact in that regard. Our duty is to make an independent reflective constitutional judgment when reviewing, as we do here, the trial judge's conclusions based upon that which he found to be true, *i.e.*, the police officer's version.

We recognize that:

[A]lthough we give great weight to the findings of the hearing judge as to specific, first-level facts (such as the time that an interrogation began, whether a meal was or was not served, whether a telephone call was requested, etc.) we must make our own independent judgment as to what to make of those facts; we must, in making that

---

3. For an interesting discussion on "Pretext arrest," see LaFave, *Search and Seizure,* § 7.5(e).

independent judgment, resolve for ourselves the ultimate, second-level facts....

*Walker v. State,* 12 Md.App. 684, 694–95, 280 A.2d 260 (1971). *See Borgen v. State,* 58 Md.App. 61, 79, 472 A.2d 114 (1984); *Manalansan v. State,* 45 Md.App. 667, 415 A.2d 308 (1980); *Fidazzo v. State,* 32 Md.App. 590, 363 A.2d 583 (1976); *Dixon v. State,* 23 Md.App. 19, 327 A.2d 516 (1974); *Howell v. State,* 18 Md.App. 429, 437, 306 A.2d 554 (1973), *rev'd on other grounds,* 271 Md. 378, 318 A.2d 189 (1974). *See also In Re Anthony F.,* 293 Md. 146, 152, 442 A.2d 975 (1982); *Logue v. State,* 282 Md. 625, 630, 386 A.2d 780 (1978). Here the "second-level fact" is the existence or non-existence of reasonable grounds to believe that the appellant would disregard the traffic citation.

The police officer's version of what occurred and his articulation of their impression upon him are evaluated as "first level facts." As such, we must give great weight to the findings of the trial judge with respect to these first level facts. As an appellate court, we

can reject the testimony of a witness credited by the triers of the fact only when the testimony is inherently improbable. There must exist a physical impossibility that the statements of the witness are true or their falsity must appear without resorting to inferences or deduction. The appellate court may not substitute its judgment with respect to the credibility of a witness for that of the ... trial judge on the ground that the evidence is inherently improbable unless it is so clearly false and unbelievable that reasonable minds may not differ.

*Borgen, supra* [58 Md.App.] at 79–80, 472 A.2d 114.

Because Officer Fabula's testimony was neither inherently improbable nor physically impossible, we must accept the trial court's findings as to the first level facts.

█ The concept of first and second level facts arose primarily from "confession" cases in which the ultimate question of voluntariness is one of fact. It has been extended, however, to cases in which the ultimate question is

one of law—whether an officer's knowledge sufficed to give him probable cause to make an arrest or conduct a warrantless search. Although in a literal sense it is probably inappropriate to refer to such a legal conclusion as a "fact" —even a "second level" or "constitutional" fact—the same analysis is employed. We give the trial court deference with respect to the underlying facts—what the officer observed and what his mental state was—but use our own judgment as to whether the legal conclusion drawn by the court from those facts is correct.

Now, in making our own independent judgment as to what to make of those facts, *Walker, supra,* we must resolve for ourselves the ultimate second level facts of this case—the existence or non-existence of ("reasonable ground") probable cause to believe that the appellant would not appear for trial. Was the officer justified in determining that it was more likely so than not so that the appellant would fail to appear at trial? We must remember that unlike situations where a police officer is assessing past conduct, as we noted earlier, Officer Fabula was making a prognosis. Based on his experience as a police officer, based on what he saw the appellant do at the scene, he had to "prognosticate" as to whether the appellant would honor the citation. We must remember that the police officer, through his testimony, placed a great deal of weight on the nervous behavior of the appellant. We cannot say that was unreasonable. Likewise, he placed a great deal of weight on the only type of identification presented by the appellant—the prison I.D. card. That this was not a very reassuring piece of identification was not an unreasonable concern of Officer Fabula. The conduct of the appellant in exiting the car in a manner which caused the police officer to believe he would flee, again, was not an unreasonable consideration on the part of the police officer.

Like other cases involving "probable cause," what is reasonable turns on the particular facts and evidence presented. The facts must be carefully weighed and sensi-

tively balanced in each case [4] so that the constitutional rights of the individual citizen to be free from unwarranted intrusion shall be carefully considered in harmony with the necessity of diminishing the carnage on our highways by fair enforcement of the motor vehicle laws. *See Mercer v. State*, 6 Md.App. 370, 251 A.2d 387 (1969), *cert. denied*, 255 Md. 743.

We hold that under the particular facts and circumstances of this case, the arrest was lawful.

### The Inventory Search

■ Appellant asserts that the "so-called inventory search was merely an excuse to discover what was in the paper bag in the console compartment." The State incorrectly contends that this issue was not preserved. This issue was clearly raised below, but was not expressly ruled upon by the trial judge. We believe, however, that by overruling appellant's motion to suppress, the trial judge implicitly ruled on the issue, and therefore it is properly before us for appellate review.

---

4. In arguing that there were not sufficient reasonable grounds to arrest appellant, appellant cites three cases, each of which we may easily distinguish. In *United States v. Thompson*, 597 F.2d 187 (9th Cir.1979), the Ninth Circuit held a search of defendant's person to be unconstitutional, not because it stemmed from an allegedly unlawful arrest, as is asserted here, but because the search violated *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and its progeny. In *State v. Hehman*, 90 Wash.2d 45, 578 P.2d 527 (1978), the defendant had been stopped and had produced a recently expired driver's license. In holding the custodial arrest to be illegal, the Washington court noted a statutory alternative to arrest, signing a written promise to appear in court, was not given to the defendant. The court, however, said "we do not imply that a law enforcement officer must disregard custodial arrest if he has other reasonable grounds apart from the minor traffic violation itself." *Id.*, 578 P.2d at 529. Finally, appellant's cite to *State v. Carner*, 28 Wash.App. 439, 624 P.2d 204 (1981), is without merit, as the holding there was based on an unreasonable "third search" at the police station after the defendant had been *legally* arrested.

Here the trial court determined there existed enough factors to constitute "reasonable grounds" to arrest the appellant. Accordingly, there was no error.

We hold that the search of the vehicle was legal. Having validly arrested the defendant, Officer Fabula proceeded to make a lawful search incident to the prior lawful arrest. *Gustafson v. Florida,* 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973); *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *Jones v. State,* 56 Md.App. 101, 122, 466 A.2d 895 (1983). *See also* R. Gilbert and C. Moylan, *Maryland Criminal Law: Practice and Procedure* § 29.4 (1983). His observation on the appellant's person of what he believed to be cocaine thereafter placed the officer in a position where he had the legal right to search the automobile, particularly since he had earlier observed the appellant conceal a bag within the console of that vehicle. *Colorado v. Bannister,* 449 U.S. 1, 101 S.Ct. 42, 66 L.Ed.2d 1 (1980). *See also New York v. Belton,* 453 U.S. 454, 455, 461, 101 S.Ct. 2860, 2861, 2864, 69 L.Ed.2d 768 (1981).

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.

ROBERT M. BELL, Judge, dissenting.

I dissent.

I cannot agree with the majority that "under the particular facts and circumstances of this case, the arrest was lawful;" rather, I believe that the facts and circumstances of this case clearly demonstrate that appellant's arrest was a mere subterfuge to search appellant and his car in order to obtain evidence of crime. Consequently, I would reverse the judgment of the circuit court.

The law applicable to arrest for traffic offenses is codified in Md. Transportation Code Ann. § 26–202. Since the offense for which appellant could have been arrested is not one of the offenses specifically enumerated in subsections (a)(1) or (a)(3) and subsections (a)(4) and (a)(5) are inapposite, we direct our attention to subsection (a)(2) which provides:

(a) *In general* — A police officer may arrest without a warrant a person for a violation of the

Maryland Vehicle Law, including any rule or regulation adopted under it, or for a violation of any traffic law or ordinance of any local authority of this state, if: ...

(2) The person has committed or is committing the violation within the view or presence of the officer, and either:

(i) The person does not furnish satisfactory evidence of identity; or

(ii) The officer has reasonable grounds to believe that the person will disregard a traffic citation ...

Because the trial judge found that Parker furnished sufficient evidence of identification, this appeal turns upon the meaning and application of subsection 2(ii).

The majority correctly concludes that "reasonable grounds" as used in the statute is synonymous with "probable cause". *Edwardsen v. State,* 231 Md. 332, 337, 190 A.2d 84 (1963) ("the 'reasonable grounds' or 'probable cause' may consist of facts and circumstances within the officer's knowledge or of which he has reasonably trustworthy information...") *Mulcahy v. State,* 221 Md. 413, 421, 158 A.2d 80 (1960) ("... a peace officer may arrest without a warrant, provided there were *reasonable grounds* to believe at the time of arrest that a felony had been committed and that the person arrested had committed the offense. [emphasis added]".) *Johnson v. State,* 8 Md.App. 187, 191, 259 A.2d 97 (1969) ("... [T]he rule of probable cause is [a] non-technical conception of a reasonable ground·for belief of guilt, ..., but more evidence than would arouse a mere suspicion.") *See also Murray v. State,* 236 Md. 375, 203 A.2d 908 (1964); *Ford v. State,* 37 Md.App. 373, 377 A.2d 577 (1977). As such, as the majority has correctly set forth,

"reasonable grounds" requires less evidentiary justification than would be required to prove beyond reasonable doubt that the violator will not appear, but more than would be required to arouse a "reasonable suspicion", which "involves a significantly lower degree of objective evidentiary justification than does probable cause...". *Watkins v. State,* 288 Md. 597, 606, 420 A.2d 270 (1980). Furthermore, the test of the existence or non-existence of reasonable grounds is an objective one. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

Section 26–202(a)(2)(ii) *does* require that probable cause exist with regard to prospective, rather than retrospective conduct, which, as the majority stresses imposes a duty on the officer at the scene to prognosticate; however, it does not signal the lessening of the quantrum of evidentiary justification for an arrest or the permissibility of applying a more subjective standard to the probable cause determination on review. The objective test remains both viable and mandatory. It is in this context that we must determine if the facts and circumstances shown by the evidence and as enunciated by the trial judge, objectively constitute "reasonable grounds to believe that the person will disregard a traffic citation."

Our threshold task, when reviewing a probable cause determination, is to identify objective factors which directly relate to the probability of non-compliance with a citation. It is against such factors that the officer's initial determination and the court's later one must be judged. Md.Rule 4–216(f) provides some guidance:

(f) *Factors Relevant to Conditions of Release.*—In determining which conditions of release will reasonably ensure the appearance of the defendant as required, the judicial officer, on the basis of information available or developed in a pretrial release inquiry, may take into account:

(1) The nature and circumstances of the offense charged, the nature of the evidence against the de-

fendant, and the potential sentence upon conviction, insofar as these factors are relevant to the risk of nonappearance;

(2) The defendant's prior record of appearance at court proceedings or flight to avoid prosecution or failure to appear at court proceedings;

(3) The defendant's family ties, employment status and history, financial resources, reputation, character and mental condition, length of residence in the community, and length of residence in the state;

(4) The recommendation of an agency which conducts pretrial release investigations;

(5) The recommendation of the State's Attorney;

(6) Information presented by defendant's counsel;

(7) The danger of the defendant to himself or to herself or others;

(8) Any other factor, including prior convictions, bearing on the risk of a wilful failure to appear.

I recognize, of course, that the information contemplated by this rule will be developed in a more leisurely fashion and will be more complete in the context of a bail hearing than is possible at the scene of an arrest; however, it is obvious to me, given the purpose of the rule—to *"reasonably ensure* the appearance of the defendant as required"* (emphasis added), Md.Rule 4–216(d)—that the factors enumerated are also relevant to a similar determination required to be made to justify an arrest. Therefore, although the rule requires that the determination whether and under what circumstances a defendant will appear at trial be made at a different and later stage of the criminal prosecution than the determination required by § 26–202(a)(2), I think the factors enumerated in subsection (f), particularly numbers 1, 2, 3, 6,[1] and 8, being objective in nature, are helpful in

---

**1.** It is not likely defendant's attorney will be present at the scene of the arrest for traffic violation. Therefore the information required by

judging whether "reasonable grounds to believe that the person will disregard a traffic citation" existed in this case. Another factor relevant to this determination is whether the officer sought to issue the person a citation, the receipt of which the person refused to acknowledge, *See* Transp. art. § 26–203(b) and (c).[2] With this background, I now proceed to consider the case *sub judice.*

No question of the propriety of the stop of appellant's vehicle has been raised and, because appellant was driving without a license, it is clear that a violation of the traffic laws had occurred.[3] Therefore, only the facts before the court and those factors[4] enunciated by the trial judge as forming the reasonable grounds for the officer's belief that appellant would disregard a traffic citation need be considered.

The trial judge relied on the following factors: (1) appellant was nervous; (2) appellant "did not supply that degree

---

number 6 must be read as being information obtained from the defendant, himself.

**2.** Transp. art. § 26–203(b) and (c) provide:

(b) *Officer to make request and advise of the possibility of arrest.* —On issuing a traffic citation, the police officer shall request the person to sign the statement on the citation acknowledging its receipt. If the person refuses to sign, the police officer shall advise the person that failure to sign may lead to the person's arrest.

(c) *Refusal prohibited.*—On being advised that failure to sign may lead to his arrest, the person may not refuse to sign. If the person continues to refuse to sign, the police officer may arrest the person for violation of this section or, as provided in § 26–202(a)(5) of this subtitle, for the original charge, or both.

**3.** Transp. art. § 16–101(a)(1) provides:

(a) *In General.*—An individual may not drive or attempt to drive a motor vehicle on any highway in this state unless:

(1) he holds a driver's license issued under this title ...

**4.** Neither the trial judge, nor the majority deigns to elucidate how these factors support the conclusion that appellant would not comply with a citation. I find this failure on the part of the majority to be significant since it has itself recognized that when reviewing the trial judge's conclusions, "[o]ur duty is to make an independent reflective constitutional judgment." It is not evident to me, from its opinion, that it has so judged the trial judge's conclusions.

of evidence as to his identity, which includes, I find his address, to put the officer's mind at ease"; (3) appellant produced a prison identity card; and (4) appellant "made a suspicious move putting a bag and attempting to hide from the officer's view, a bag." He concluded that "all of these factors together furnish objective reasonable grounds to believe that he would not show up, that he would disregard the traffic citation," thus focusing on the appropriate standard. The trial judge's concluding remarks, however, reflect an entirely different focus:

> I admit it is not that powerful a case that there cannot be a cogent argument, as there has been by Mr. Hedgepeth, but I also believe that if that officer had released that defendant and let him drive away in that car, that that officer himself would have been subject to criticism by his superiors, who would have said why did you let that man go under these circumstances, because if you suspected something illegal was going on when he put the lid on the console chamber down, if you had any suspicions at all, you can bet your boots that any evidence that there might be, would disappear once you let him go, and I think the officer may well be subject to censor if he had not arrested the defendant.

It is in this context that the evidence and the findings of the trial judge must be independently, reflectively judged.[5a]

The evidence does not support the trial judge's findings that the officer had reasonable grounds to arrest appellant. Three of the four factors enumerated by the trial judge are directly relevant to, and probative of, a belief that appellant may have been engaged in criminal activity. If germane at all to appellant's probable non-compliance with a citation, they are only indirectly and tangentially so. Obvious in this regard is the reliance on appellant's secreting of a bag

---

[5a.] The majority inexplicably fails to mention the trial judge's concluding remarks and, thus, neither explains them, nor reconciles them with the factors the trial judge earlier found to be dispositive of probable cause.

when he was stopped. That act unquestionably was suspicious, and unquestionably aroused the officer's suspicion that criminal conduct was afoot. That act, however, at best, sheds but little light on the probability of appellant's compliance with a traffic citation had one been issued to him. Similarly, appellant's "attitude, nervousness", assuming that a violation of the traffic laws—even a minor one [5]—does not legitimately engender some nervousness, when viewed in the context of this case, tells us a great deal more about appellant's possible involvement in criminal activity than it does about his likelihood to obey a citation.[6] The display of a prison identification card is the least helpful yet; at best, it is neutral. Although it shows that appellant had been in prison for a more serious charge, the reasonable inferences deducible therefrom do not support the conclusion that appellant would fail to comply with a traffic citation, especially since, in this case, none of those inferences rises above speculation. Thus, taken singly or as a group, these factors do not come close to establishing reasonable grounds to believe that appellant would not comply with a citation.

The failure to provide an address *is* a significant factor in predicting whether a person will obey a citation. The trial judge properly found that appellant did not supply an address. Even so, the circumstances of this case do not provide the required evidentiary justification for the arrest.

---

**5.** A cogent argument may be made that driving without a license is not a minor offense. It is a five point violation, *see* § 16–402(a)(9), and for a second or subsequent conviction, the maximum penalty is one year in jail, $500.00 fine or both. See § 27–101(f), *infra*.

**6.** The specific observations were:
"[h]e was rubbing his face, and walking to the front of the car, and repeating, man, I should not have been driving the car, and all that stuff, you know, you got me"; without request, appellant got out of the car, "walking fast" causing him (the officer) to think he might run away; and he (the officer) thought appellant "was on something."

The only offense for which probable cause [7] to charge and/or arrest existed was driving without a license, the maximum penalty for which is a five hundred dollar ($500) fine and, as to which, a court appearance may not be required.[8] When stopped, appellant either volunteered or supplied upon request, the following information, which was verified: a visual inspection of the engine area of the car verified that there was a problem with the transmission; a stolen car check verified that the car was not reported stolen and was registered to a female friend of appellant's; [9] and a license check verified what appellant volunteered— that he did not have a driver's license. Significantly, the license check did not disclose that appellant had outstanding traffic citations or that his privilege to drive was either suspended or revoked. Although it contained no address, appellant did supply, as the court found, identification on request. And contrary to the officer's professed fear, appellant did not flee or attempt to flee. Juxtaposed

---

7. There is no contention, with which we agree, that probable cause for arrest for a charge other than the traffic offense was shown.

8. *See* Trans. art. § 27–101 which provides:
   (a) *Violation of vehicle laws a misdemeanor.*—It is a misdemeanor for any person to violate any of the provisions of the Maryland Vehicle Law unless the violation is declared to be a felony by the Maryland Vehicle Law or by any other law of this State.
   (b) *Penalties—$500.*—Except as otherwise provided in this section, any person convicted of a misdemeanor for the violation of any of the provisions of the Maryland Vehicle Law is subject to a fine of not more than $500.00.
   *But See* Trans. art. § 27–101(f) which provides:
   (f) *Same—$500 and 1 year.*—Any person who is convicted of a violation of any of the provisions of § 14–103 of this article ("Possession of motor vehicle master key"), or of a second or subsequent violation of any of the provisions of § 16–101 of this article ("Drivers must be licensed") or § 21–902(b) of this article ("Driving while under the influence of alcohol") is subject to a fine of not more than $500 or imprisonment for not more than 1 year or both.

9. It is unclear from the record whether it was verified at the scene that the registered owner of the car was appellant's friend. It is clear however that appellant's characterization of the registered owner as his friend was not disputed at trial.

against this background are the following: the officer did not ask appellant for his address and, in fact, testified at trial that he was not interested in appellant's address. The arrest was made, in the officer's words, "[b]ecause I didn't think that everything was going together ..., honestly, as far as his attitude, nervousness. He was placed under arrest for no Maryland driver's license, the ID part of it." [10]

This is not a case in which pertinent information *was requested* and refused or the pertinence of information explained, but still not produced. Here, the information relied upon at trial was not requested at the scene because the officer apparently deemed it unimportant. The trial judge's reliance on appellant's failure "[to] supply that degree of evidence as to his identity, which includes, I find, his address, to put the officer's mind at ease" imposed a requirement that appellant negate at the scene of his arrest, and in a vacuum, the existence of probable cause for the officer to believe that he would not obey a citation and, in effect, made the test for judging the existence of that probable cause a subjective one, totally dependent on the officer's state of mind.[11] Appellant could not possibly meet the burden thus placed on him. He could not know unless he was told what the standard was which he was required

---

10. Later, on cross-examination the officer testified that it was the lack of a license, without reference to "the ID part of it", which formed the basis for the arrest. He also testified later that he was concerned about the prison ID.

11. Despite its protestations to the contrary, I believe the majority does adopt and apply a subjective test. The majority does say that its task is to "resolve for ourselves the ultimate second level facts of this case—the existence or non-existence of ('reasonable ground') probable cause to believe that the appellant would not appear at trial"; however, as I read the majority opinion, it simply defers to the officer's prognostication, finding it reasonable, without in any way independently and reflectively analyzing those "second level facts." In this regard, the majority's observation, "Quite naturally, [the officer's] prognostic ability is a reflection of his training, experience and intelligence, all of which contribute to his ability to reason", is instructive. Moreover, I think it interesting that we are provided with no indication of the training, experience and intelligence of the officer to whose judgment the majority so readily and facilely defers.

to negate, nor could he know, again without having been told, what would satisfy the officer. The officer, on the other hand, is permitted to arrest a minor traffic violator without obligation to first request relevant information or to explain its importance.

I would hold that when an arrest has been made pursuant to § 26–202(a)(2) [12] the record must objectively reflect the existence of reasonable grounds to believe that the person arrested will not comply with a traffic citation. This may require, depending upon the circumstances, that the officer affirmatively develop and verify relevant information at the scene. Such a requirement will not be onerous since much of that information is readily available or may be obtained as a result of checks routinely made. For example, the nature of the offense, including the potential sentence, and the evidence against the defendant are matters uniquely within the knowledge of the arresting officer; aspects of the defendant's community stability, such as, for example, his address and employment status, are proper, indeed, necessary, subjects of interrogation; and, in the context of a traffic violation, information regarding the defendant's prior record of non-compliance with citations may be obtained as a part of the normal license check procedure. Of course, a defendant's refusal to acknowledge receipt of a traffic citation after its issuance would be such clear and objective reasonable grounds. In short, prior to the arrest of the traffic law offender, generally the officer must afford the offender an opportunity to provide information relevant and necessary to an assessment of his or her likelihood of compliance with a citation.

I agree with appellant that the officer's actions in this case were motivated by a desire to investigate suspected criminal activity and not by any concern that appellant would not obey a citation. Likewise, close scrutiny of the

---

12. I envision that in most instances a citation will be issued; therefore, the propriety of an arrest will generally be determined by reference to Transp. art. § 26–203(b) and (c), *supra*.

court's analysis, although partially couched in the appropriate statutory language, reveals that the court applied, in reality, the wrong standard. The precipitating event in the chain leading to appellant's arrest was the officer's belief that appellant secreted a bag from him. Thereafter, the way in which the officer viewed appellant's actions was colored by the officer's suspicions that appellant was engaged in criminal activity: appellant's nervousness was attributed to a cause other than his having violated the traffic laws and appellant's display of a prison identification card was viewed as corroborating those suspicions. Fortuitously, appellant did not have a driver's license. This fact thus became, for the officer, the vehicle to discover the nature of the criminal activity he suspected. As the concluding comments of his ruling demonstrate, the trial judge adopted and legitimized this faulty premise. This arrest was a mere subterfuge for the search for evidence that followed.